[No. 11774.   Department One.   October 9, 1914.]

BANK OF ELLENSBURG, *Appellant*, v. PALATINE INSURANCE COMPANY, *Respondent*.[1]

INSURANCE—FIRE INSURANCE—POLICY—APPLICATION—FALSE REPRESENTATIONS—EFFECT.   A fire insurance policy is void where it was issued to a bank as mortgagee as its interest might appear, upon false representations of the bank's president and cashier, who were also soliciting agents of the insurance company, to the effect that the moral risk was first class and that the owner had gone out of business because its president was sick, when in fact the owner was insolvent and its business was in the hands of a receiver, and the mortgage had already been foreclosed by the bank and such fact was not disclosed; the policy providing that it will be void if foreclosure proceedings be commenced or any change of title be made, and if the insured concealed or misrepresented any material fact or circumstance concerning the insurance or property.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered September 12, 1913, in favor of the defendant, dismissing an action upon a fire insurance policy, tried to the court. · Affirmed.

*Pruyn & Hoeffler* and *M. J. Gordon*, for appellant.

*Bogle, Graves, Merritt & Bogle*, for respondent.

GOSE, J.—This is an appeal from a judgment entered in favor of the defendant in an action to recover upon a fire insurance policy.   The policy runs to Ellensburg Meat Company, a corporation, loss, if any, payable to the appellant as its interests may appear.   It bears date November 21, 1910.   On that date, E. H. Snowdon and P. H. W. Ross, who were soliciting agents for the respondent, doing business as a partnership under the firm name of Snowdon & Ross, wrote the respondent as follows:

"We do not find abattoirs on your prohibited list.   We have bound you $2,000 on the finest one in this county.   Loss payable to our bank.   We shall deem it a favor if you will

[1]Reported in 143 Pac. 447.

carry this line for us, which we imagine you easily could with your splendid re-insurance facilities. We need the protection. This is not a chattel mortgage. We hold a real estate mortgage on the 28 acres of land on which the plant stands. It is a valuable property and the physical risk, for one of its class, is a good one. The moral risk is first class. The Ellensburg Meat Co. has gone out of business, as its president is a very sick man, but the business is leased to the Kittitas Meat Co., a sub-branch of the Carstens Packing Co. which is a flourishing concern, doing a good business in the premises of the Ellensburg Meat Co. The risk is shown on the Sanborn map on page 22, block 1001. We have sweetened this risk by a new line on a fine new dwelling and if you do take this for us we will try to reciprocate in other ways."

On November 25 the respondent answered as follows:

"We acknowledge receipt of your favor of the 21st inst., to the effect that you have written a loss of $2,000 on this risk, loss, if any, payable to your bank. In view of your interest in the property we will accept a risk subject to inspection of Mr. Parkhurst. Also abattoirs are on our prohibited list. See Slaughterhouses."

Snowdon was then the president of the appellant bank and Ross was its cashier, and they owned substantially all of its capital stock. The policy contained the following provisions:

(a) "This entire policy will be void if, with the knowledge of the insured, foreclosure proceedings be commenced or notice be given of sale of any property covered by this policy by virtue of any mortgage or trust deed, or if any change other than the death of insured takes place in the interest, title or possession of the subject of insured, whether by legal process or by judgment or by voluntary act of insured otherwise."

And (b) "This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated therein."

The property was destroyed by fire on the 19th day of July, 1911.

The policy is a contract between the appellant and the respondent for the benefit of the former. *Boyd v. Thuringia Ins. Co.*, 25 Wash. 447, 65 Pac. 785, 55 L. R. A. 165. It will be observed that the letter of Snowdon & Ross, which forms the basis of the contract of insurance, represented that "the moral risk is first class. The Ellensburg Meat Co. has gone out of business as its president is a very sick man." The moral risk was not good. The Ellensburg Meat Company had not gone out of business because its president was a very sick man. It had gone out of business because it had been adjudged to be and admittedly was insolvent, and because its property had been placed in the hands of a receiver. This fact was not disclosed in the letter. The mortgage of the appellant had been foreclosed, and a decree had been entered some months before the letter was written. This fact was not disclosed in the letter. The letter accepting the risk advised that abattoirs were on the prohibited list. The failure to disclose the fact that the mortgage had been foreclosed, that the Ellensburg Meat Company was insolvent, and that its property was in the hands of a receiver, coupled with the statement that the moral risk is "first class," vitiated the policy.

"Representations to insurers, before or at the time of making the contract, are a presentation of the elements upon which to estimate the risk proposed to be assumed. They are the basis of the contract,—its foundation, on the faith of which it is entered into. If wrongly presented in any respect material to the risk, the policy that may be issued thereupon will not take effect. To enforce it would be to apply the insurance to a risk that was never presented." May, Insurance (4th ed.), § 183.

We announced a like principle in *Algase Co. v. Corporation of the Royal Exchange Assur.*, 68 Wash. 173, 122 Pac. 986. While the facts are not the same, we recognized the principle that any fact which rendered a risk more hazardous was a material one. In *Weigle v. Cascade Fire & Marine*

*Ins. Co.*, 12 Wash. 449, 41 Pac. 53, quoting from 1 Wood on Insurance, p. 555, we said:

"Where the conduct of the assured, either by acts of omission or commission, are such as influence the insurer in either or any of these respects, it in law is fraudulent, even though the insured did not know that his conduct was of that character, or did not intend to mislead the insurer. It is not essential that the conduct of the assured in these regards should be such as indicate bad faith on his part."

Snowdon & Ross were experienced insurance men. Their letter shows that they knew that abattoirs were not desirable risks. They were advised that abattoirs were on the prohibited list. It was their duty in this letter to disclose everything material to the risk and to make a truthful statement of the facts. They assured the respondent that the moral risk was good, and yet withheld material facts which, if disclosed, would no doubt have deterred the respondent from entering into the contract. Be that as it may, the facts which we have stated were known to them and were omitted, and being material facts, the failure to state them avoids the policy. As we have said, the statement that the meat company, the owner of the property, had gone out of business because its president was a very sick man was untrue. The appellant's abstract does not show whether he was or was not a very sick man, or whether he was sick at all. It does, however, show that the company had suspended business because of its insolvency and because its property was in the hands of a receiver. *Dunham v. Citizens' Ins. Co.*, 34 Wash. 205, 75 Pac. 804.

There is another circumstance worthy of notice. After the property was burned, Snowdon & Ross indorsed upon the policy a statement that the mortgage was in process of foreclosure. The property had been sold to the appellant under the decree of foreclosure about two months before the date of the fire. This indorsement was removed by Snowdon & Ross when the respondent commenced inquiring about it.

The appellant has cited *Pioneer Sav. & Loan Co. v. Providence Wash. Ins. Co.*, 17 Wash. 175, 49 Pac. 231, 38 L. R. A. 397. In that case the change of title which it was claimed vitiated the policy, occurred after the application and payment of the premium and before the delivery of the policy. The facts as they existed at the time of making the application were truthfully stated.

The judgment is affirmed.

CROW, C. J., CHADWICK, ELLIS, and MAIN, JJ., concur.