**SUNCO MANUFACTURING COMPANY and Cecil Tangner, d/b/a A & R Construction Company, Appellees,**

v.

**James A. HARGROVE, Appellant.**

**No. 50750.**

Court of Appeals of Oklahoma, Division No. 1.

May 30, 1978.

Released for Publication by Order of Court of Appeals June 22, 1978.

E. C. Nelson, Muskogee, for appellees.

Bob Rudkin, Edmond, for appellant.

ROMANG, Judge:

Defendant-Appellant Hargrove (Appellant) had a contract for the construction of a building with Defendant Cecil Tangner d/b/a A & R Construction Co. (Tangner). Tangner had a contract for the supply of materials with the Plaintiff-Appellee Sunco Manufacturing Co. (Appellee). Toward the end of construction Appellant sent the following letter to Appellee on November 19, 1974:

It is my understanding that an agreement has been reached by your corporation and Mr. Cecil Tangner regarding an unpaid balance of materials used and installed on my medical building now in construction at 7 North Broadway, Edmond, Oklahoma.

Mr. Tangner has requested that I make my check in the amount of $1,500 which would pay for all labor and material to complete my contract, payable to Sunco Corporation and A & R Construction Company jointly.

Please accept this letter as my committment to make my check payable jointly to your corporation and A & R Construction Company upon completion of my contract now in effect.

Mr. Tangner informs me also that upon your receipt of this committment that you will issue a lien waiver covering my project to date and through completion of my contract.

On November 20, 1974, Appellee executed a waiver of materialman's lien and delivered it to Tangner. The waiver was never delivered to Appellant.

On June 17, 1975 Appellee sent Appellant a letter attaching Appellant's letter of November 19, advising that the $1,500 payment had been outstanding for eight months, and requesting payment. On January 19, 1976 Appellant wrote Appellee advising that Appellant had not received the lien waiver, that the letter of November 19, 1974 was "null and void," and that the $1,500 was to be paid to Tangner alone on counsel's advice. On January 12, 1976 Appellant had accepted an indemnification agreement from Tangner protecting Appellant from damages for payment to Tangner in light of the fact that the time for filing of a lien had passed.

Appellee filed this action for breach of contract. Judgment by default was entered on September 26, 1976 in favor of Appellee against Tangner and in favor of Appellant against Tangner on the indemnification agreement.[1] After trial to the court, judgment was entered in favor of Appellee and against Appellant on February 16, 1977. Appellant appeals arguing that (1) the November 19th letter quoted above was an offer which was not accepted prior to its revocation on January 19, 1976 and, if accepted, that the acceptance was not communicated to the offeror before revocation, and (2) that certain interrogatories were improperly excluded from evidence.

The District Court labelled the November 19th letter as a "committment" and concluded that Appellant's revocation effort of January 19, 1976 was ineffective. It is unclear whether the trial court considered the execution of the lien waiver to be an acceptance of an offer not needing communication or that communication to Tangner was sufficient, whether the request for payment was sufficient communication of acceptance, or whether Appellee's reliance on the November 19th letter in executing the waiver and its forbearance from filing a lien until it was too late estopped the Appellant from revoking its offer. The theory

on which the respective contentions rested in the trial court does not appear in the record and the Journal Entry does not cast any light on these issues. Indeed, Appellee contends the letter of November 19th was itself an acceptance although the contention is not supported by argument.

■ In their briefs the parties do not differ as much on the law as on its application. Since the November 19th letter was a communication to a party with whom the Appellant had no previous negotiations (Tangner was clearly not the agent of either party but had contractual relations with each) it seems clear to us that the letter was an offer to pay $1,500 jointly to Appellee and Tangner on completion of the contract and that "on receipt of this committment that [Appellee] . . . will issue a lien waiver." This offer was clearly made to enable Tangner to obtain the lien waiver it needed to supply to Appellant. The lien waiver was given on November 20th but apparently such was not communicated to Appellant. In our opinion Appellant bargained for a lien waiver to date and conditioned payment on completion of the contract. The completion could not have been bargained for on these facts since there is no evidence of an effort to obtain Appellee's promise to be a surety for Tangner or to complete the work on Tangner's default. The question then is whether this offer for a unilateral contract, i. e., an offer of a promise in exchange for the issuance of a lien waiver, was accepted by the issuance of the lien waiver although not actually communicated to the offeror at the time.

■ Title 15 O.S. 1971, § 70 provides that "performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." But 15 O.S. 1971, § 72 also provides that a "proposal may be revoked at any time before its acceptance is communicated to the proposer . . .." The question becomes one of the duty of the offeree in a unilateral contract to notify the offeror

1. It is unclear what the basis was for the judgment for Appellant against Tangner on the indemnification agreement since Appellant's liability to Appellee had not been adjudicated on the date of the first judgment.

that the act requested has been performed. Our cases are not dispositive of this issue and the matter is otherwise not free from doubt. One authority has outlined the problem thusly:

"On the question of whether . . . [the offeree in a unilateral contract] must give notice of the fact that he has performed there are essentially three views. The first is that notice is not required unless requested by the offeror. The second view, adopted by the Restatements, is that a contract arises at least upon performance, but if the offeree has reason to know that the offeror has no adequate means of learning of the performance with reasonable promptness and certitude, the duty of the offeror is discharged unless the offeree exercises reasonable diligence to notify the offeror or the offeror otherwise learns of the performance within a reasonable time or the offer expressly or by implication indicates that notification is not necessary. The third and least tenable view is the same as the second except that if notice is required, no contract is consummated unless and until the notice of performance has been communicated." Calamari and Perillo, The Law of Contracts pp. 60–61 (2nd Ed. 1977) (footnotes omitted.)

Generally, Prof. Williston is associated with the first view, 1 Williston on Contracts § 68, and the second view is associated with the Restatement of Contracts (First and Second) § 56. Cf. 1 Corbin on Contracts §§ 67–68. By analogy the Uniform Commercial Code, 12A O.S. 1971, § 2–206(2) provides that

"[w]here the beginning of a requested performance is a reasonable mode of acceptance an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before acceptance."

We recognize that these authorities are neither binding on this Court on these facts nor authoritative expressions of the meaning of our statute in Title 15. The basis of our contract law is statutory although it follows the contours of the common law and evolves like the common law through judicial construction. But we must also be constantly reminded when construing statutes based on the common law that "[t]he common law, as modified by constitional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma . . . ." 12 O.S. 1971, § 2. Thus the developing common law of contracts can be looked to as an aid in deriving the contemporary meaning of our statutes.

It is clear that the offeror can dispense with notice that performance has occurred. It is equally clear that in most cases performance itself will actually notify the offeror. But in cases such as this where the offeror has not expressly or by clear implication dispensed with notice and where performance was actually rendered to a third party the question of communication of the acceptance is unclear.

The lien waiver was needed by Tangner to fulfill his obligations to the Appellant. The Appellee refused to supply the waiver without some guarantee that the funds paid to Tangner would be used to pay it. The letter was calculated to induce the Appellee to deliver a lien waiver to Tangner in exchange for a promise of a joint check. The waiver was delivered but no notice was given. In June, 1975 Appellee notified Appellant it was waiting for the "outstanding" $1,500. Appellant in January, 1976 sought to declare the November 19th letter "null and void."

On analysis it seems fair to say that Appellee complied with Appellant's request when it delivered the waiver to Tangner and that since the waiver was to protect Appellant's property, and was delivered to the person (the contractor) who was to supply it to Appellant that the Appellee could reasonably expect the waiver to be delivered to Appellant. So doing Appellee fulfilled its obligation of acceptance by complete performance and putting that performance in hands reasonably calculated to deliver it to Appellant. Appellee further notified Appellant that he was awaiting

payment under the November 19th letter clearly indicating to Appellant that the Appellee believed the conditions had been met. Relying on the letter, its own performance, and its June, 1975 notice, Appellee did not file a lien. Only after the expiration of the time for filing the lien did Appellant enter an indemnity agreement with Tangner, pay Tangner and then seek to "revoke" his offer on which he knew Appellee was expecting payment.

 Communication as used in 15 O.S. 1971, § 72 need not mean that the proposer has received actual knowledge of performance. It is sufficient if the offeree has acted reasonably in light of the terms of the offer and can reasonably expect performance itself to be notice or takes reasonably prompt steps to get notice or render performance through the mode of communication established by the parties or the offer as reasonable or customary.

As between the Appellant and the Appellee, the Appellant had more reason to inquire about the lien waiver and Tangner's possession of it than did Appellee. Greater diligence by Appellant would have provided adequate protection.

With no citation of authority the Appellant argues in three paragraphs that the District Court erred in excluding at trial evidence of the Defendant Tangner's answers to interrogatories. Appellee points out Appellant's lack of authority and emphasizes it by its own brief treatment of the issue. In reply Appellant cites 12 O.S. 1971, § 549 which authorizes written interrogatories and provides that the answers to interrogatories "may be used to the same extent as answers to depositions." We are not advised how a deposition would be used in this case. We have accepted the facts supported by part of the interrogatories mentioned in Appellant's brief (No. 6 and part of No. 3). The only difference is the contention in the interrogatories that Tangner did not receive the lien waiver. No offer of proof was made (although the interrogatories were in the record).

 We believe it is sufficient for our decision to note that Appellant does not support this issue by citation of authority nor by convincing argument. "A plausible but not convincing argument in the brief unsupported by citation of authority is not sufficient to overcome the presumption in favor of the correctness of the judgment of the trial court." *Keel v. MFA Mutual Ins. Co.,* Okl., 553 P.2d 160. See also *Abla v. State of Oklahoma ex rel. A B C Bd.,* Okl., 463 P.2d 968. Without further research, *Abla* supra, it does not appear that Appellant's argument is sound nor is the argument convincing. We affirm the judgment of the District Court.

AFFIRMED.

BOX, P. J., and REYNOLDS, J., concur.