[No. 46450.   En Banc.   July 10, 1980.]

VIRGINIA B. LIEBERGESELL, *Petitioner*, v. FRANKLIN W. EVANS, ET AL, *Respondents*.

*Sinnitt, Teitge & Sinnitt,* by *Paul Sinnitt,* for petitioner.

*Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern,* by *Valen H. Honeywell,* for respondents.

HOROWITZ, J.—Plaintiff seeks review of an appellate court decision that defendants could not be estopped from asserting the defense of usury to plaintiff's action for recovery of amounts due on notes made by defendants. We reverse the Court of Appeals, Division Two, and remand the case to Pierce County Superior Court for trial on the merits. We take these actions because a borrower under a duty to speak who fails to disclose the illegality of a proposed rate of interest is estopped from asserting the defense of usury against his lender if she rightfully relied

on the borrower's advice in making the otherwise usurious loan.

## I

■ For purposes of considering the appropriateness of summary judgment for the defendants, the facts and reasonable inferences therefrom are set forth in the light most favorable to the plaintiff, as reflected in her pleadings and affidavit. *Morris v. McNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974). The defendants offered no evidence of the circumstances surrounding the loans on their motion for partial summary judgment. In light of the foregoing we state the facts of the case as the trial court had the right to find them in light of the plaintiff's uncontroverted affidavit and reasonable inferences therefrom.

Mrs. Virginia Liebergesell was asked by defendant Donald Kotowski to invest moneys belonging to her and to her children in a business operated by Kotowski and codefendant Franklin Evans. Defendants Kotowski and Evans bought, renovated, and then rented or sold old houses as a sideline. On Kotowski's request and advice, plaintiff originally loaned defendants several thousand dollars at 12 percent interest, on the understanding that she also would receive 20 percent of the profits realized on resale or rental of the homes.

Mrs. Liebergesell and Mr. Kotowski originally became acquainted through the friendship of their daughters. Plaintiff, a widowed schoolteacher with neither expertise in business nor any knowledge of the concept of usury or that interest rates higher than 12 percent were illegal, relied on Mr. Kotowski for investment advice and regarded him as a financial counselor and guide. Mr. Kotowski was aware of and encouraged that reliance. He urged Mrs. Liebergesell to invest in his business. Mr. Kotowski's fulltime job was as a field auditor for the State of Washington; the job description for all auditing positions with the State requires a thorough knowledge of accounting and a bachelor's degree with a major in that subject. Mrs. Liebergesell appreciated

Mr. Kotowski's superior knowledge of financial affairs and considered his advice important in arranging her family's finances.

Several months after the series of loans made by Mrs. Liebergesell to the defendants at an interest rate of 12 percent, in September 1975, Mr. Kotowski told plaintiff that bookkeeping on the notes was too complicated to compute her 20 percent profit share, and that as an alternative the notes evidencing Mrs. Liebergesell's loans to the defendants could be written with higher rates of interest. Subsequently, the defendants prepared and signed a series of notes, written on standard promissory note forms, bearing interest at rates from 36 percent, on two notes later consolidated and not sued on here, to 18 percent, on the notes which Mrs. Liebergesell seeks to enforce in this action. Some of the notes were made payable to Mrs. Liebergesell individually; some to her as custodian for her minor children. Mrs. Liebergesell accepted the notes as drawn by defendants; no negotiation with regard to payable interest or terms took place between the parties. Defendants knew the interest rates were usurious and further knew that the plaintiff was unaware of their illegal nature. However, they did not inform her of their usurious character or of the adverse consequences of usury.

Mrs. Liebergesell collected a total of $5,207.63 in interest at usurious rates on a total principal of $23,500 on these illegal notes. In early 1977, approximately one and a half years after Mr. Kotowski had first proposed usurious notes in lieu of a share of profits for Mrs. Liebergesell's investment, he proposed a second change in the parties' financial arrangements. Mr. Kotowski told Mrs. Liebergesell that until more houses were sold, he wanted to reduce the interest due on the amounts loaned by plaintiff to 12 percent. Mrs. Liebergesell, still trusting the business advice offered by Kotowski, did not object, and a note was drawn by Mr. Kotowski consolidating the amounts due and setting the interest rate at 12 percent.

Unlike the earlier "form" notes used by Mr. Kotowski, the substitute note did not provide for attorney's fees in the event of a lawsuit. The defendants did not inform the plaintiff of this omission; she discovered it herself only after reading the proposed note. In view of the adverse business outlook cited by the defendants in urging her to accept a note with a lesser return, plaintiff objected to the omission of a provision for attorney's fees and refused to accept the note.

Mrs. Liebergesell stated that Mr. Kotowski told her that defendant Evans, who works full time at the University of Washington, had threatened to "yell usury." She further stated that these threats were made to force her to agree to the consolidating note at 12 percent. Mr. Kotowski also told her that the rates were not illegal if set by the borrower, as in this case. Finally, Mrs. Liebergesell alleged in her undisputed affidavit that the defendants made it a practice to obtain funds for their business in this manner: by borrowing substantial sums from "unmarried ladies" who presumably are not aware of financial arrangements or usury laws, to set illegal interest rates, and then to threaten to defend suits brought for recovery on notes evidencing the loans with charges of usury instead of paying off the notes.

The Court of Appeals granted discretionary review of the trial court's denial of defendants' motion for partial summary judgment. The defendants in their motion had sought to deduct $10,415.26 from the $23,500 due, relying on usury as an affirmative defense pursuant to RCW 19.52.030, which provides a penalty of double the amount paid in illegal interest. Following the rule that the burden is on the moving party to show the absence of a material issue of fact, the trial court had denied the motion because the judge believed from the showing made by the plaintiff that she might be able to prove at trial that the defendants should be estopped from asserting the usury defense. The Court of Appeals reversed, holding that the elements of the defense of usury were present, that the transaction could not be characterized as a joint venture between plaintiff

and defendants, and that defendants were not estopped to raise the defense of usury. For the reasons set forth below, we now reverse and remand the case to the trial court for trial on the merits.

## II
### ESTABLISHMENT OF USURY DEFENSE

██ To establish the defense of usury, a defendant must show: (1) a loan or forbearance, express or implied, of money or other negotiable tender; (2) an understanding between the parties that the principal must be repaid; (3) the exaction of a greater rate of interest than is allowed by law; and (4) an intention to violate the law. *Flannery v. Bishop,* 81 Wn.2d 696, 504 P.2d 778 (1972). In this case, there was a loan made by plaintiff, to be absolutely repaid by the defendants, at interest rates greater than 12 percent.

The Court of Appeals has held that the intent necessary to satisfy requirement (4) is the parties' intention merely to enter into the transaction. The intent thus need not be wrongful or calculated to violate the usury law. *Tacoma Commercial Bank v. Elmore,* 18 Wn. App. 775, 781, 573 P.2d 798 (1977). The parties have not addressed this issue and we therefore do not decide if Mrs. Liebergesell had the requisite intent to fulfill the requirements of the defense of usury. We assume, without deciding, that defendants have the right to assert the affirmative defense that the transactions were usurious if they are not otherwise estopped from doing so.

The plaintiff contends, however, that even though the four elements necessary to establishment of the defense may have been met, the defendants should be precluded from asserting usury because of the parties' relationship in this case.

## III
### ESTOPPEL FROM ASSERTING USURY DEFENSE

██ We have never before examined the effect of the defendant borrower's role in initiating or controlling a loan transaction on his ability to later raise the defense of usury.

However, in the great majority of states in which the question has been considered, the courts have estopped a borrower who initiated a transaction at an illegal rate of interest from setting up the defense of usury. Annot., 16 A.L.R.3d 510, 513–16 (1967). At the very least, the borrower has been precluded from recovering statutory penalties for usury. 16 A.L.R.3d at 516–17. We are convinced that the general doctrines of estoppel compel us to join the majority of jurisdictions in refusing to allow the defendant to assert usury in cases in which the elements of estoppel exist.

This court has refused in the past to estop a usury defense because of exculpatory actions, such as a disclaimer of the right to any usurious interest, taken by the borrower *after* the making of the illegal loan. *Home Sav. & Loan Ass'n v. Sanitary Fish Co.*, 156 Wash. 80, 286 P. 76 (1930); *Hopgood v. Miller*, 107 Wash. 449, 181 P. 919 (1919). However, there is nothing to suggest that the general doctrine of estoppel, developed to prevent the assertion of other defenses in the law, should not apply to the defense of usury. As in other areas of the law, the general theory underlying estoppel of the usury defense is that an individual should not benefit from his own wrong. 16 A.L.R.3d at 513. If the usury defense were allowed in this case, the borrowers could avoid total repayment of even the principal due because of the statutory penalties for usury. This would be true even though, while under a duty to speak, the borrowers had induced the lender to enter into a transaction at the illegal rate by failing to tell her of its usurious nature. To avoid such a result, estoppel should apply as it does elsewhere in the law of this state.

A

ESTOPPEL IN GENERAL

■ Estoppel requires: (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) an action by the other party on the faith of such admission, statement, or act; and (3) an injury to the other party if the claimant is allowed to contradict or repudiate his earlier

admission, statement, or act. *Arnold v. Melani,* 75 Wn.2d 143, 147, 437 P.2d 908 (1968).

In the instant case, the alleged acts of defendants in soliciting loans at illegal rates of interest are inconsistent with their later claims of usury. If they are allowed to make the claim, the plaintiff lender will be injured through the penalties imposed by the usury laws.

However, in order for estoppel to be invoked the reliance reflected in element (2) of the requirements for estoppel must be *justified.* "Not all those who rely upon another's conduct or statements may raise an estoppel. Rather it is only those who have a *right to rely* upon such acts or representations." *Leonard v. Washington Employers, Inc.,* 77 Wn.2d 271, 280, 461 P.2d 538 (1969). Thus, the question of whether an estoppel may be asserted depends on the plaintiff's right to rely on defendants' representations, either explicit or implied through their failure to speak, regarding the validity of the loan.

## B
### PLAINTIFF'S RIGHT TO RELY

██ Generally, participants in a business transaction deal at arm's length; it has been said that an individual has no particular duty to disclose facts nor any particular right to rely on the statements of the party with whom he contracts at arm's length. However, the existence of a fiduciary relationship between the parties and the general duty to contract in good faith may make it possible for an individual to rightfully rely on statements made by another with whom he contracts or on the validity of a transaction based on a failure to disclose relevant information concerning the agreement entered into between them.

1. Fiduciary Relationship. In some circumstances a fiduciary relationship which allows an individual to relax his guard and repose his trust in another may develop. *Moon v. Phipps,* 67 Wn.2d 948, 954, 411 P.2d 157 (1966). The Restatement of Contracts describes such a fiduciary relationship as one in which one party "occupies such a relation

to the other party as to justify the latter in expecting that his interests will be cared for . . ." Restatement of Contracts § 472(1)(c) (1932); *see also* comment *c* (describing the circumstances under which such a "fiduciary position" may arise). Such a fiduciary relationship creating justifiable reliance could be thought to have developed between plaintiff and defendant Kotowski if plaintiff's allegations regarding the source and extent of her trust in Mr. Kotowski were confirmed at trial.

In refusing to affirm the trial court's ruling that an estoppel might have been shown by the plaintiff had she been allowed to proceed to proof at trial, the Court of Appeals relied on the fact that most of the cases estopping the usury defense involved attorneys who borrowed from clients. The appellate court reasoned that because no legally established fiduciary relationship, such as that between attorney and client, existed between the parties, no estoppel could arise.

A fiduciary relationship arises as a matter of law between an attorney and his client or a doctor and his patient, for example. But a fiduciary relationship can also arise *in fact* regardless of the relationship *in law* between the parties. *Salter v. Heiser,* 36 Wn.2d 536, 550–55, 219 P.2d 574 (1950).

> A confidential or fiduciary relationship between two persons may exist either because of the nature of the relationship between the parties historically considered fiduciary in character; *e.g.,* trustee and beneficiary, principal and agent, partner and partner, husband and wife, physician and patient, attorney and client; or the confidential relationship between persons involved may exist in fact.

*McCutcheon v. Brownfield,* 2 Wn. App. 348, 356–57, 467 P.2d 868 (1970). *See also* Restatement of Contracts § 472, comment *c* at 898 (1932) ("A fiduciary position . . . includes not only the position of one who is a trustee, executor, administrator, or the like, but that of agent, attorney, trusted business adviser, and indeed any person whose

relation with another is such that the latter justifiably expects his welfare to be cared for by the former.").

Whether such a fiduciary relationship existed in fact in this case depends on the development of factual proof. The facts alleged by the plaintiff in her affidavit in response to the defendants' motion for partial summary judgment, when considered in a light most favorable to the plaintiff, were sufficient to raise a question of fact which prevented summary judgment.

For instance, in *Salter v. Heiser, supra,* lack of business expertise on the part of one party and a friendship between the contracting parties were important in establishing the right to rely. *Graff v. Geisel,* 39 Wn.2d 131, 141–42, 234 P.2d 884 (1951). Superior knowledge and assumption of the role of adviser may contribute to the establishment of a fiduciary relationship. Friendship seemed a determinative element under the facts of *Gray v. Reeves,* 69 Wash. 374, 376–77, 125 P. 162 (1912):

> A point is made that Mr. Gray was a shrewd and successful business man and ought not to have been misled by promises that, when revealed in the courtroom, seem to be unreasonable. But in this appellants have overlooked an element which disarms caution; that is, friendship. . . . The impulse that leads men to trust those in whom they have confidence cannot be ignored by the courts. Reputation for integrity or for knowledge of a given subject would be worth nothing if its possessor could not assume that others would believe in him or accept his opinion.

Were the plaintiff's statements as set forth in her uncontroverted affidavit to be accepted at trial, she could establish a fiduciary relationship as a matter of fact between the parties. She could thus assert a right to rely on defendant's actions and to estop the application of the usury defense.

2. Contractual Good Faith. On remand, even if the plaintiff is unable to prove that the defendants breached a *fiduciary* duty to disclose that the proposed agreements were usurious, defendants may have breached their *contractual* duty to deal in good faith by failing to inform the plaintiff

that the interest rates were illegal and unenforceable. The law cannot allow contracting parties to deceive one another when there is a duty to act in good faith.

█ The law of contracts reflects an evolving trend towards an interpretation of "freedom of contract" acknowledging the parties' duty to deal in good faith with one another. Seventy years ago, this court noted that "the tendency of the more recent cases has been to restrict rather than extend the doctrine of *caveat emptor." Wooddy v. Benton Water Co.*, 54 Wash. 124, 127, 102 P. 1054 (1909). That continuing trend is reflected in several areas of the law of contract.

For instance, this requirement of contractual fair dealing is found in section 1–203 of the Uniform Commercial Code, RCW 62A.1–203:

> Obligation of good faith. Every contract or duty within this Title imposes an obligation of good faith in its performance or enforcement.

The courts of this state have used RCW 62A.1–203 in interpreting the provisions of the U.C.C. in a manner emphasizing good faith dealings in the performance of contracts. *See Peter Pan Seafoods, Inc. v. Olympic Foundry Co.*, 17 Wn. App. 761, 770, 565 P.2d 819 (1977). The code has often been used as an analogy to situations that are not explicitly covered by its provisions. *See, e.g., Nevada Nat'l Bank v. Huff*, 94 Nev. 506, 582 P.2d 364 (1978); *Sunco Mfg. Co. v. Hargrove*, 581 P.2d 925 (Okla. App. 1978). It reflects principles of contract law which often apply to the making and performance of agreements governed by our laws. That is the case in section 1–203.

A similar requirement of good faith in disclosing relevant facts while negotiating a contract can be seen in many vendor/purchaser cases in which buyers have recovered against sellers who failed to disclose information relevant to the subject matter of the agreement. *See, e.g., Obde v. Schlemeyer*, 56 Wn.2d 449, 353 P.2d 672 (1960) (liability for failure to disclose termite damage to apartment house);

*Ikeda v. Curtis*, 43 Wn.2d 449, 261 P.2d 684 (1953) (liability for failure to disclose that hotel's income was largely derived from acts of prostitution); *Sorrell v. Young*, 6 Wn. App. 220, 491 P.2d 1312 (1971) (liability for failure to disclose that residential lots were fill dirt). The parties in these and other vendor/purchaser cases were strangers before the litigated transactions; no duty to disclose independent of the contractual relationship itself could have arisen to explain the court's willingness to hold the vendors responsible for failing to disclose defects in property sold by them to the purchasers. The cases considering the duty to disclose in cases such as these speak of the vendor's silence as "fraudulent concealment", a species of fraud. The law has not yet acknowledged a general requirement of full disclosure of all relevant facts in all business relationships. However, it is clear from these cases that the duty to disclose relevant information to a contractual party *can* arise as a result of the transaction itself within the parties' general obligation to deal in good faith.[1] *See* Restatement of Contracts § 472 (1932).[2]

---

[1]This principle of good faith in contractual dealing was known by and applied at the time of the Romans. The concept of the *bonae fidei* contract in the Roman law governing consensual contracts required absolute good faith between the agreeing parties under appropriate circumstances:

> [I]t was bad faith not only if one party actively deceived the other on some material point, but even if he did no more than passively to acquiesce in the other's self–deception.

B. Nicholas, *An Introduction to Roman Law* 176 (1962). *See also* W. Buckland & A. McNair, *Roman Law and Common Law* (1936); J. Jolowicz, *Historical Introduction to the Study of Roman Law* (1961).

[2]This section of the Restatement sets out those circumstances in which a contracting party is required to disclose relevant facts:

§ 472. When Lack of Disclosure Is Not Privileged.

   (1) There is no privilege of non–disclosure, by a party who

     . . .

     (b) knows that the other party is acting under a mistake as to undisclosed material facts, and the mistake if mutual would render voidable a transaction caused by relying thereon, or

     (c) Occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for . . .

If in the exercise of good faith the defendants should have revealed to Mrs. Liebergesell the illegality of the proposed loans, they breached a contractual duty of fair dealing which would prevent them from asserting the usury defense. Having established that plaintiff might be able to prove her right to rely on defendants, the question remains whether defendants engaged in any admission, statement, or act which would justify estoppel of later inconsistent claims.

## C
### Defendant's Actions Estopping Usury Defense

██ Defendant Kotowski solicited the loans made at usurious rates by Mrs. Liebergesell in this case. In doing so, he concealed from plaintiff the fact that the proposed interest rates were illegal under the law of this state. If the plaintiff had a right to rely on defendants, such failure to apprise her of the contents and applicability of the usury statutes is sufficient to estop the defendant from asserting the defense of usury now.

The case is similar to *Boonstra v. Stevens–Norton, Inc.,* 64 Wn.2d 621, 393 P.2d 287 (1964), in which a broker failed to tell an investor who relied on him for financial advice that a proposed investment was of a limited and encumbered nature. In *Seals v. Seals,* the Court of Appeals acknowledged that no fiduciary relationship as a matter of law existed between the parties in *Boonstra. Seals v. Seals,* 22 Wn. App. 652, 655–56, 590 P.2d 1301 (1979). Nevertheless, the court in *Boonstra* stated that, although there was no "wilful withholding" of documents containing information relevant to the offered investment:

> [T]here was a duty to disclose the information appellant possessed and of which respondent was ignorant. Here, because of the superior business acumen and experience of appellant as compared with respondent, because of the

---

There can be no question as to the materiality of the usury statute, and defendants' knowledge of its materiality, in this case. *See Bank of Ellensburg v. Palatine Ins. Co.,* 82 Wash. 55, 143 P. 447 (1914).

superior factual knowledge of the one as against the factual ignorance of the other, and because appellant's officer knew respondent was relying on his superior knowledge, experience and judgment, there existed a quasi–fiduciary relationship, if not an actual one, that brings the case within the rule that a

".  .  . party to a business transaction is under a duty to excercise [*sic*] reasonable care to disclose to the other before the transaction is consummated .  .  . such matters as the other is entitled to know because of a .  .  . relation of trust and confidence between them, .  .  ." Restatement, Torts § 551(2)(a), p. 117.

*Boonstra v. Stevens–Norton, Inc., supra* at 625. *See also Sigman v. Stevens–Norton, Inc.,* 70 Wn.2d 915, 425 P.2d 891 (1967); *Hutson v. Wenatchee Fed. Sav. & Loan Ass'n,* 22 Wn. App. 91, 588 P.2d 1192 (1978). The court in *Boonstra* rejected the broker's argument that the lender could not rely on his failure to disclose the encumbrances because they were a matter of public record because "'wrongdoers cannot shield themselves from liability by asking the law to condemn the credulity of their victims.'" *Boonstra v. Stevens–Norton, Inc., supra* at 626, quoting *Cunningham v. Studio Theatre, Inc.,* 38 Wn.2d 417, 425, 229 P.2d 890 (1951). *See also Ikeda v. Curtis, supra.* It is irrelevant that in this case the information of which Mrs. Liebergesell should have been apprised was contained in the usury statute rather than in the financial or physical facts relevant to the loans. If the defendants had a duty to disclose relevant facts to plaintiff, the existence and application of the usury laws was a relevant matter which should not have been concealed. The failure to state the contents of the applicable statutes would be actionable. *See Burien Motors, Inc. v. Balch,* 9 Wn. App. 573, 513 P.2d 582 (1973) (liability for failure to disclose zoning restrictions which made intended use of property illegal).

Thus, if the relationship or dealings of the parties was such that defendants had a duty to disclose, and plaintiff had a right to rely on their disclosure of relevant facts and circumstances, the defendants' failure to apprise Mrs.

Liebergesell that the usury laws provided a severe penalty for the exaction of the interest rates suggested and offered by the defendants would estop them from asserting the defense at this time.

## IV

■ Finally, assertion of the defense in this case does not, as noted by the Court of Appeals, fulfill the public policy of the usury laws:

[The usury statute] is designed to protect those who by adversity and necessity of economic life are driven to borrow money at any cost. The protection granted is based on the fact that many borrowers are powerless to resist the avarice of the money lenders.

*Baske v. Russell,* 67 Wn.2d 268, 273, 407 P.2d 434 (1965). When the transaction is suggested, initiated, and controlled by the borrower, who acts as financial adviser to the lender justifiably relying on his advice, that public policy is not fulfilled by allowing the defendant to assert the defense of usury. To hold otherwise would encourage the borrower to induce the uninformed lender to charge as much interest at an illegal rate as possible, for then when the time came to collect a judgment for exaction of usurious interest, the borrower would recover not only the interest paid, but twice that amount, pursuant to the penalty provisions of RCW 19.52.030.

The case is reversed for further proceedings consistent with this opinion.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HICKS, and WILLIAMS, JJ., concur.

DOLLIVER, J., concurs in the result.