**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

JASWANT SINGH, an individual, JASLEEN DULAY, an individual, PAL SINGH DULAI, an individual, and JAGPAL CORPORATE, INC., a Washington corporation; KANGPAL CORPORATE INC., a Washington corporation,

                    Appellants,

          v.

MALVINDER KANG AND JAGDISH K. GREWAL a/k/a JAGDISH KANG, husband and wife, and the marital community thereof,

                    Respondents.

No. 87134-0-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Pal Dulai, Jaswant Singh, and Jasleen Dulay sued Jagdish and Malvinder Kang asserting claims for fraud, conversion, breach of contract, shareholder oppression, and breach of fiduciary duty. The trial court dismissed all of Dulai's claims and Singh and Dulay's breach of contract and shareholder oppression claims on summary judgment. After Singh and Dulay rested, the trial court entered judgment as a matter of law under CR 50 and dismissed their remaining claims. Dulai, Singh, and Dulay appeal. We affirm.

I

A

In 2001, Dulai purchased a gas station and motel in Port Angeles known as Fairmount Grocery and Hotel.

In 2002, Dulai and Jagdish Kang formed Jagpal Corporate, Inc. (Jagpal). Dulai and Jagdish Kang were each 50 percent owners in the company. Jagpal rented real property to a restaurant business.

In 2003, Dulai and Malvinder Kang formed Kangpal Corporate, Inc. (Kangpal). Dulai was a two-third shareholder in the company and Malvinder Kang was a one-third shareholder. Kangpal operated the motel and gas station business. Kangpal rented the real property from Dulai. The Kangs were employees and were responsible for managing and operating the business, including maintaining all business records.

In 2009, Dulai transferred his shares in Jagpal and Kangpal. The parties dispute to whom Dulai intended to transfer his shares.

Dulai alleges that he intended to transfer his shares to his children, Jaswant Singh and Jasleen Dulay. Dulai claims he signed two blank certificates for shares of the capital stock, and he asked the Kangs to write the names of his children in the transferee section. Dulai alleges that he met with Malvinder Kang at the notary office in order to carry out the transfer of shares. After the certificates were notarized, Malvinder Kang left the notary office with the share certificates, but Dulai and his children never received any copies of the transfer certificates.

Dulai claims that the certificates were improperly altered by the Kangs without his consent. He claims that the Kangs wrote their names on the transfer certificates instead

of his children. Dulai alleges that before the attempted transfer to his children, he and Malvinder Kang prepared an agreement. He alleges the agreement provided that Malvinder Kang would continue to manage the business and that Malvinder Kang would not share any profit but only pay the mortgage and business expenses since the business was not doing well. Dulai alleges that the parties agreed that if the business did not start preforming better, then the properties and businesses would be sold and the shareholders would share profit per their shares.

According to the Kangs, in 2009, Dulai told Malvinder Kang that he planned to stop making payments on his mortgage to take advantage of federal legislation that passed after the 2007 mortgage crisis. Malvinder Kang told Dulai that it was not a good idea and that he was concerned that creditors would go after the business because Kangpal's grocery and motel business were in Dulai's name. Then, according to Malvinder Kang, Dulai said that he would transfer all the shares in Kangpal and Jagpal to the Kangs. They agreed that Malvinder Kang would take on all the debts and liabilities in the businesses.

The certificates of stock show that Dulai transferred his shares in both corporations to the Kangs. After 2009, the annual reports of the Kangpal and Jagpal only show the names of the Kangs as shareholders or governors of the businesses. None of the names of the plaintiffs appear on these documents after 2009.

In 2012, Malvinder Kang formed and was the sole owner of 1137 W. Highway 101 LLC (LLC). Malvinder Kang formed the business to purchase the real property for Kangpal's motel and grocery from Dulai.

According to Dulai, he and Malvinder Kang agreed that Malvinder Kang would form the new LLC and Singh, Dulay, and Malvinder Kang could would each own one-third shares. Dulai transferred Fairmount Grocery and Hotel to the newly formed LLC.

In June 2020, Dulay visited the properties and learned that Malvinder Kang sold the properties. Dulai was unaware the businesses were sold and believed they were still operational. According to Dulai, Malvinder Kang confirmed that he sold the properties but would be sharing the profits with Dulay and Singh. Malvinder Kang made one payment of $2,100 to Singh and the memo on the check states "donation." Malvinder Kang stated that the money was as a wedding gift, not a payment for shareholders. Malvinder Kang did not make any further payments.

On July 7, 2020, the Kangs' former attorney drafted a letter to Dulai. The letter was in response to Dulai's phone call to Malvinder Kang regarding receiving profit from the sale of the businesses and threatening a lawsuit. The attorney stated that he reviewed the stock certificates and sale documents and those show that Dulai transferred his shares in the business several years prior.

B

In August 2022, Singh and Dulay sued the Kangs asserting claims for oppression of shareholders, conversion, breach of fiduciary duty, and fraud. In November 2023, Singh and Dulay amended the complaint to include Dulai as a necessary party. Their amended complaint also added a breach of contract claim.

The Kangs moved for summary judgment seeking to dismiss all the claims as time-barred by the statute of limitations. In the alternative, the Kangs sought (1) a determination that Singh and Dulay were never owners or shareholders of Jagpal or

Kangpal, (2) dismissal of Jagpal and Kangpal as plaintiffs, and (3) dismissal of the breach of contract claims because the plaintiffs could not establish the existence of an enforceable contract.

The trial court granted summary judgment in part. The court first determined that all of Dulai's claims were barred by the statute of limitations. Next, the court determined as a matter of law that Singh and Dulay were never shareholders of Kangpal or Jagpal and dismissed the shareholder oppression claims. The court also dismissed Jagpal and Kangpal as plaintiffs and dismissed all the breach of contract claims. The trial court denied summary judgment to claims by Singh and Dulay for conversion, fraud, and breach of fiduciary duty.

The remainder of the claims proceeded to trial. After Singh and Dulay rested their case, the Kangs successfully moved for judgment as a matter of law under CR 50.

Dulay, Singh, and Dulai appeal.

II

We review an order on summary judgment de novo. Meyers v. Ferndale Sch. Dist., 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). "Summary judgment is appropriate where there is no genuine issue as to any material fact, so the moving party is entitled to judgment as a matter of law." Meyers, 197 Wn.2d at 287; see also CR 56. We review the facts in the light most favorable to the nonmoving party, here Dulay, Singh, and Dulai. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

A

Dulai argues that the trial court erred in dismissing his claims under the statute of limitations. We disagree.

The statute of limitations is an affirmative defense.  Haslund v. City of Seattle, 86 Wn.2d 607, 620-21, 547 P.2d 1221 (1976).  Summary judgment that is based on a statute of limitations should be granted only when the record demonstrates there is no genuine issue of material fact as to when the statutory period began.  CR 56(c); Olson v. Siverling, 52 Wn. App. 221, 224, 758 P.2d 991 (1988).

The determination of whether the statute of limitations bars a plaintiff's claim depends on when the plaintiff's cause of action accrued.  Haslund, 86 Wn.2d at 619.  The general rule is "that a cause of action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief."  Haslund, 86 Wn.2d at 619.  Where the discovery rule applies, "a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm."  Green v. A.P.C., 136 Wn.2d 87, 96, 960 P.2d 912 (1998).  The burden is on the plaintiff to show that the facts constituting the tort were not discovered or could not be discovered within the statutory period.  G.W. Const. Corp. v. Pro. Serv. Indus., Inc., 70 Wn. App. 360, 367, 853 P.2d 484 (1993).

Here, the amended complaint does not identify which claims are brought by which plaintiff.  Therefore, assuming that Dulai was included on all claims, the claims were shareholder oppression, breach of fiduciary duty, breach of contract, conversion, and fraud.  The statute of limitations is three years for shareholder oppression, conversion, breach of fiduciary duty, and fraud.  RCW 4.16.080; Michel v. Melgren, 70 Wn. App. 373, 376, 853 P.2d 940 (1993).  If the contract is in writing, the statute of

limitations is six years. RCW 4.16.040(1). For contracts not in writing, the statute of limitations is three years. RCW 4.16.080(3).

Dulai argues that his claims relate back under CR 15(c). That rule provides, in relevant part:

> An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the original party, the party to be brought in by amendment (1) has received such notice of the institution of the action that the new party will not be prejudiced in maintaining his or her defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the new party.

CR 15(c). But even if the requirements of CR 15(c) are met, "a party's failure to timely name a necessary party cannot be remedied if the failure resulted from 'inexcusable neglect.'" Watson v. Emard, 165 Wn. App. 691, 700, 267 P.3d 1048 (2011) (quoting Teller v. APM Terminals Pac. Ltd., 134 Wn. App. 696, 706, 142 P.3d 179 (2006)). The party seeking to add a party bears the burden to prove the initial failure to do so was excusable. Watson, 165 Wn. App. at 700. "[I]nexcusable neglect exists when no reason for the initial failure to name the party appears in the record." Watson, 165 Wn. App. at 700 (citing Teller, 134 Wn. App. at 706).

There is no evidence of excusable neglect. And there is no evidence as to the reason for the failure to initially add Dulai to the complaint. Further, in July 2020, Dulai received a letter from the Kangs' attorney that neither Dulai or his children had any shares in the company and that Dulai would not be receiving any money from the sale of the businesses. Therefore, Dulai should have known that he was a necessary party because he was on notice that his alleged agreement with the Kangs was not followed.

Either way, Dulai could have discovered that the transfer of shares was not carried out as intended since 2009 with diligent inquiry. Dulai alleges that he did not know his children's names were not on the stock certificates until he saw it in a response to a discovery request in January 2023. But Dulai never asked for copies of the stock certificates, any of the signed agreements, or any other company records. Moreover, after 2009, publicly available documents showed that the Kangs were the sole owners of Kangpal and Jagpal. With diligent inquiry, Dulai could have learned at any point from 2009 that the shares were not transferred to his children.

For those reasons, the trial court properly dismissed Dulai's claims as barred by the statute of limitations.

B

Singh and Dulay argue that the trial court erred in dismissing the shareholder oppression claims and breach of contract claims on summary judgment. Singh and Dulay argue that Dulai's belief that he transferred the shares in the corporations to his children was sufficient to create a dispute of material fact that Singh and Dulay were shareholders. We disagree.

The certificates of the stock transfer and other business documents show that the Kangs owned the corporations after 2009. Dulai's children's names do not appear anywhere in the corporation documents. There is no evidence that Singh and Dulay were ever shareholders in any of the corporations. Dulai's statement that he intended to transfer the shares to his children is insufficient to create a dispute of material fact. Therefore, the claim for shareholder oppression was properly dismissed.

Singh and Dulay next argue the trial court erred in dismissing the breach of contract claims. We disagree. In order to demonstrate a breach of contract, a plaintiff must demonstrate that "a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged." Univ. of Wash. v. Gov't Emps. Ins. Co., 200 Wn. App. 455, 467, 404 P.3d 559 (2017).

Singh and Dulay assert that it is unfair and unreasonable for them to produce copies of an agreement or contract because the Kangs had full control over the documents for the businesses. Singh and Dulay offer no legal authority in support. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Because there is no evidence of a contract, the trial court properly dismissed the breach of contract claims.

For those reasons, the trial court did not err in its order on summary judgment.

III

Singh and Dulay next argue that the trial court erred in dismissing the remaining claims as a matter of law under CR 50.

We review a CR 50 motion de novo. Paetsch v. Spokane Dermatology Clinic, P.S., 182 Wn.2d 842, 848, 348 P.3d 389 (2015). "A reviewing court reviews the evidence in the light most favorable to the aggrieved party and determines whether the trial court correctly applied the law." Saunders v. Lloyd's of London, 113 Wn.2d 330, 335, 779 P.2d 249 (1989). Granting a motion for judgment as a matter of law is appropriate when there is no substantial or reasonable inference to sustain a verdict for

the nonmoving party. Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29, 948 P.2d 816 (1997). "Substantial evidence is said to exist if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise." Lodis v. Corbis Holdings, Inc., 192 Wn. App. 30, 61-62, 366 P.3d 1246 (2015).

A

Singh and Dulay argue that the trial court erred in dismissing the breach of fiduciary duty claim. We disagree.

A fiduciary relationship arises as a matter of law in certain relationships, including attorney and client, doctor and patient, and trustee and beneficiary. Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP, 110 Wn. App. 412, 434, 40 P.3d 1206 (2002). A fiduciary duty may also arise in fact when there is "something in the particular circumstances which approximates a business agency, a professional relationship, or a family tie, something which itself impels or induces the trusting party to relax the care and vigilance which [they] otherwise should, and ordinarily would, exercise." Alexander v. Sanford, 181 Wn. App. 135, 173, 325 P.3d 341 (2014).

Singh and Dulay assert that they had a specialized relationship because it involved both a professional relationship and family ties. First, there was not a professional relationship because the trial court determined on summary judgment that they were not shareholders of the corporations. Moreover, the plaintiffs admitted that they learned about the businesses through their father. Singh and Dulay did not participate in business activities with the Kangs.

Singh and Dulay argue that there was a fiduciary relationship because they treated the Kangs as family. They cite Liebergesell v. Evans, 93 Wn.2d 881, 613 P.2d

-10-

1170 (1980) in support. There, the court analyzed whether a fiduciary relationship arose when a businessman induced a school teacher to lend him money at 20 percent interest rate even though he knew that interest rates over 12 percent were illegal. Liebergesell, 93 Wn.2d at 884-85. The teacher had no business expertise and considered the businessman an advisor and friend. Liebergesell, 93 Wn.2d at 884-85. The court concluded that there was sufficient evidence to overcome summary judgment because superior knowledge and the role of an advisor may establish a fiduciary relationship. Liebergesell, 93 Wn.2d at 891.

Liebergesell is distinguishable. There is no evidence that Dulay and Singh relied on the Kangs as business advisors. Rather, Dulay and Singh relied on statements by their father that they were shareholders. Moreover, there was no evidence that Dulay and Singh believed that the Kangs had superior knowledge and relied on them for business decisions. Instead, Dulay and Singh relied on their father for information regarding the business. This does not create a fiduciary relationship with the Kangs.

The trial court did not err in dismissing the shareholder oppression claims as a matter of law.

B

Singh and Dulay argue that the trial court erred in dismissing the conversion claim under CR 50. We disagree.

"'[C]onversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.'" Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n, 133 Wn. App. 835, 852, 138 P.3d 638 (2006) (alteration in original) (quoting Pub. Util. Dist. No. 1 of Lewis County v. Wash.

Pub. Power Supply Sys., 104 Wn.2d 353, 378, 705 P.2d 1195 (1985)). "The burden is on the plaintiff to establish ownership and a right to possession of the converted property." Meyers Way Dev. Ltd. P'ship v. Univ. Savings Bank, 80 Wn. App. 655, 674-75, 910 P.2d 1308 (1996).

There was no evidence of a property interest because Singh and Dulay's names are not on the stock transfer certificates. The only evidence that they had a property interest was their testimony that their father told them that they had an interest in the companies. They provided no other evidence that they had a property intertest. As mentioned, no direct or circumstantial evidence was submitted to prove that there was an agreement to transfer the shares to the children. Therefore, beside Singh and Dulay's own statements that they believed they were owners, there was no evidence that they held any property interest. Singh and Dulay did not meet their burden to establish ownership or a right to the possession of the converted property. The trial court did not err in dismissing the conversion claim as a matter of law.

C

Singh and Dulay lastly argue that the trial court erred in dismissing the fraud claim under CR 50. We disagree.

A claim for common law fraud requires a plaintiff to prove by clear, cogent, and convincing evidence that (1) the defendant made a representation of an existing fact; (2) the representation was material; (3) the representation was false; (4) the defendant knew the representation was false; (5) the defendant intended the plaintiff to act on the representation; (6) the plaintiff did not know the representation as false; (7) the plaintiff relied on the representation; (8) the plaintiff had a right to rely on the truth of

-12-

representation; and (9) the plaintiff suffered damage as a result. <u>Guarino v. Interactive Objects, Inc.</u>, 122 Wn. App. 95, 126, 86 P.3d 1175 (2004).

Singh and Dulay rely on Dulay's testimony that, before the shares were transferred, there was a conversation at a dinner party with the Kangs that Dulai wanted to transfer the shares to his children. Dulay testified that the Kangs agreed. This single comment is insufficient for the purposes of fraud because it is not a representation of an existing fact, but rather an agreement to do something in the future. <u>See</u> <u>Shook v. Scott</u>, 56 Wn.2d 351, 355-56, 353 P.2d 431 (1960).

Moreover, Singh and Dulay failed to prove reliance. They argue that Dulay relied on the Kangs' representations and suffered "reputational and emotional damage" because she brought her spouse to the properties in 2020 and learned that they had been sold. Dulay testified that they had knowledge of the transfer of shares and the status of the business from their father, not the Kangs. The Kangs' representations to Dulai are not representations to his children, and the plaintiffs provide no legal authority to the contrary.

The trial court did not err in dismissing the fraud claim as a matter of law.

We affirm.

_____
Mann, J.

WE CONCUR:

_____
Chung, J.

_____

-13-