[No. 33663-4-II. Division Two. August 22, 2006.]

GORDON E. TELLER, *Respondent*, v. APM TERMINALS PACIFIC, LTD., *Petitioner*.

700

*William D. Hochberg* and *Grady B. Martin* (of *Law Office of William D. Hochberg*), for petitioner.

*Philip R. Lempriere* and *Catharine M. Morisset* (of *Keesal, Young & Logan*), for respondent.

¶1 VAN DEREN, A.C.J. — APM Terminals Pacific, Ltd., appeals the superior court's reversal of the district court's order of summary judgment of dismissal of Gordon E. Teller's second amended complaint, which was filed about five months after the statute of limitations expired and which named APM Terminals as a defendant for the first time. We reverse the superior court and affirm the district court's summary judgment dismissal of Teller's action and remand with directions to dismiss Teller's claims.[1]

## FACTS

¶2 In 1980, Sea-Land Service, Inc., hired Gordon Teller to work as a truck driver. In May 1985, SeaLand moved its terminal operations from Seattle to a Port of Tacoma marine terminal operated by Maersk Pacific, Ltd., at 1675 Lincoln

---

[1] All other parties listed in the caption above were dismissed from this appeal by court order.

Avenue, Tacoma, Washington. The record indicates that Maersk Pacific has leased and operated the marine terminal since December 1999. Maersk Pacific changed its name to APM Terminals in May 2003.

¶3 When Sea-Land moved its marine terminal operations to the Port of Tacoma location, Teller continued his regular employment as a Sea-Land truck driver. The parties do not dispute that Teller worked continuously at the terminal beginning in 1985 through at least 2001.

¶4 In his original complaint, dated April 30, 2004,[2] Teller alleged that he suffered injuries resulting from an automobile accident with "Jane Doe" on June 1, 2001, at the "Maersk Marine Yard, an affiliate of Maersk Line, Limited." Clerk's Papers (CP) at 107. The parties do not dispute that the Lincoln Avenue property is the relevant marine terminal. Teller further alleged that Maersk Line, Ltd., was Doe's employer and that Maersk Line "by and through its employee, Defendant Jane Doe," was also at fault for causing his injuries. Teller named Maersk Line and "JANE DOE AND JOHN DOE, wife and husband, and the marital community composed thereof," as defendants. CP at 106.

¶5 But Maersk Line conducted no marine terminal operations at the Port of Tacoma on June 1, 2001. Rather, Maersk Pacific leased and operated the marine terminal on the date of the accident. Because Maersk Line was not Jane Doe's employer, Teller voluntarily dismissed his claim against Maersk Line and filed an amended complaint on August 18, 2004, naming as defendants: Maersk Line; Maersk, Inc.; Maersk Equipment Service Company, Inc.; Maersk Custom Services, Inc.; Maersk Logistics USA, Inc.; CSX Lines; and Jane and John Doe, wife and husband, and the marital community composed thereof. Apparently, entering the search term "Maersk" on the Washington Secretary of State's web site reveals that the five entities listed in

---

[2] The record contains a copy of Teller's original complaint dated April 30, 2004, but both parties seem to agree that Teller did not file his original complaint until May 10, 2004.

Teller's amended complaint are registered corporations in Washington. But Maersk Pacific is not among them.

¶6 On October 8, 2004, all five Maersk defendants notified Teller's attorney that they were not proper defendants. They offered a telephone deposition that would disclose the identity of the proper defendant if Teller would voluntarily dismiss all Maersk defendants named in Teller's amended complaint. Teller's attorney requested that the deposition take place on October 19, 2004, and noted that "[t]he depositions certainly ought to allow us to ascertain whether Defendant Jane Doe was employed by any of Defendants Maersk, and proceed with dismissal of all but Defendant Jane Doe's correct employer." CP at 72. The Maersk defendants, through their attorney, reiterated their offer in a letter dated October 12, 2004. Teller's attorney responded on October 13, 2004, confirmed the deposition on October 19, and agreed to stipulate to dismissal of the Maersk defendants following the Maersk, Inc., deposition, provided none of the named Maersk defendants was shown to be the owner/operator of the Maersk Marine Yard at the time of the motor vehicle incident. In his brief, Teller acknowledges that his attorney agreed to the terms set forth in the Maersk defendants' attorney's October 12, 2004, letter.

¶7 On October 19, 2004, the deposition disclosed that APM Terminals, formerly known as Maersk Pacific, leased and operated the relevant Port of Tacoma marine terminal. The following day, Teller filed a second amended complaint naming APM Terminals as an additional defendant. By stipulation and order of dismissal dated October 22, 2004, Teller voluntarily dismissed his action against the five Maersk entities listed in his amended complaint, leaving only APM Terminals and Jane and John Doe as defendants.[3]

¶8 In response to Teller's second amended complaint, APM Terminals moved for summary judgment, arguing

---

[3] Teller states that his claim against CSX Lines was dismissed on November 22, 2004. The parties do not treat this event or CSX Lines' involvement in Teller's action as relevant to their current dispute.

that (1) the statute of limitations barred Teller's claim and (2) Teller's second amended complaint did not relate back to his original timely complaint because Teller's delay in naming APM Terminals resulted from "inexcusable neglect." CP at 167-73.

¶9 The district court granted APM Terminals' motion and dismissed Teller's claim, finding that (1) Teller added APM Terminals to his lawsuit after the three-year statute of limitations expired on June 1, 2004; (2) in 2001, Teller had actual knowledge that Maersk Pacific operated the terminal; (3) APM Terminals' lease and operation of the terminal was a matter of public record; (4) APM Terminals' lease and operation of the terminal was readily apparent; and (5) APM Terminals' lease and operation of the terminal was reasonably ascertainable. The district court concluded that Teller's delay in naming APM Terminals resulted from inexcusable neglect and therefore his second amended complaint did not relate back to the date of his original complaint.

¶10 Teller appealed the district court's ruling to the Pierce County Superior Court. The superior court reversed the district court, stating that "there was no inexcusable neglect by Plaintiff and estoppel exists." CP at 50-51.

¶11 APM Terminals appeals the superior court's ruling.

## ANALYSIS

### I. STANDARD OF REVIEW

■■ ¶12 When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court. *Enter. Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 551, 988 P.2d 961 (1999); *Peterson v. Groves*, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). We will affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Groves*, 111 Wn. App. at 310. All facts and reasonable inferences must be considered

in the light most favorable to the nonmoving party. *Groves*, 111 Wn. App. at 310.

II. RELATION BACK UNDER CR 15(C) AND INEXCUSABLE NEGLECT

¶13 APM Terminals argues that the district court properly determined that Teller's second amended complaint did not relate back to the date of his original complaint and, therefore, the three-year statute of limitations bars his action against APM Terminals. It argues that Teller's delay in naming APM Terminals as a defendant resulted from inexcusable neglect, not excusable misidentification. APM Terminals points out that its identity as the lessee and operator of the marine terminal was readily ascertainable through a number of simple investigations and that Teller had actual knowledge that it leased and operated the marine terminal.

¶14 Teller responds that his second amended complaint satisfies the requirements of CR 15(c)[4] and that "inexcusable neglect" is not an absolute bar to relation back when an amended complaint's purpose is to substitute a correctly-identified defendant for a previously misidentified defendant and not to add a new defendant. Teller further argues that even if "inexcusable neglect" applies, any neglect was excusable because there are so many Maersk entities.

██ ██ ¶15 A determination of relation back under CR 15(c) rests within the trial court's discretion and will not be disturbed on appeal absent manifest abuse of discretion. *Foothills Dev. Co. v. Clark County Bd. of County Comm'rs*, 46 Wn. App. 369, 374, 730 P.2d 1369 (1986). The burden of proof is on the party seeking to have an amendment relate back to the original action. *Foothills*, 46 Wn. App. at 375. The moving party also has the burden of proving that any

---

[4] APM Terminals briefly disputes whether Teller satisfies CR 15(c)'s notice requirement. But APM Terminals did not raise this issue in its appeal and did not argue it in its opening brief. Thus, we do not consider it. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 609 n.18, 90 P.3d 659 (2004). Further, because the misidentified Maersk defendants and APM Terminals shared the same attorney, it is likely that APM Terminals had notice of Teller's action.

706

mistake in failing to amend in a timely fashion was excusable. *Foothills*, 46 Wn. App. at 375.

■ ¶16 Under CR 15(c), an amendment changing a party may relate back to the date of the original complaint if three conditions are satisfied: (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) within the applicable statute of limitations, the party to be brought in by the amendment has received notice of the action such that it will not be prejudiced in maintaining a defense on the merits; and (3) within the applicable statute of limitations, the party to be brought in knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the proper party. *Nepstad v. Beasley*, 77 Wn. App. 459, 464, 892 P.2d 110 (1995).

■ ¶17 In addition to CR 15(c)'s requirements, an amended complaint changing or adding a party defendant will not relate back if the plaintiff's original omission of the party resulted from "inexcusable neglect." *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 174, 744 P.2d 1032, 750 P.2d 254 (1987) ("[I]n cases where leave to amend to add additional defendant has been sought, this court has clearly held that inexcusable neglect alone is a sufficient ground for denying the motion."), *appeal dismissed sub nom. Am. Express Travel Related Servs. Co. v. Wash. Pub. Power Supply Sys.*, 488 U.S. 805 (1988); *Tellinghuisen v. King County Council*, 103 Wn.2d 221, 223, 691 P.2d 575 (1984) ("[T]he plaintiff's failure to timely name the correct party cannot have been 'due to inexcusable neglect.'" (quoting *N. St. Ass'n v. City of Olympia*, 96 Wn.2d 359, 368, 635 P.2d 721 (1981))).

■■ ¶18 Generally, inexcusable neglect exists when no reason for the initial failure to name the party appears in the record. *Haberman*, 109 Wn.2d at 174. If the parties are apparent or are ascertainable upon reasonable investigation, the failure to name them will be inexcusable. *Haber-*

*man*, 109 Wn.2d at 174. For example, failure to name a party in an original complaint is inexcusable where the omitted party's identity is a matter of public record. *Haberman*, 109 Wn.2d at 174; *Tellinghuisen*, 103 Wn.2d at 224; *S. Hollywood Hills Citizens Ass'n for Pres. of Neighborhood Safety & Env't v. King County*, 101 Wn.2d 68, 77-78, 677 P.2d 114 (1984).

¶19 Moreover, the cases that have found "inexcusable neglect" have generally considered the actions of a party's attorney, who is presumably charged with researching and identifying all parties who must be named in an action and with verifying information that is available as a matter of public record. *Nepstad*, 77 Wn. App. at 467.

¶20 Here, Teller's failure to name APM Terminals in his original complaint, despite the existence of several Maersk entities, resulted from inexcusable neglect. He did not file his original complaint until three to four weeks before the three-year statute of limitations expired. *See* RCW 4.16.080(2). Teller or his attorney had the opportunity to ascertain the terminal's lessee and operator between 2001 and May 2004. For instance, between June 1, 2001, and May 2003, there was a 12-foot by 6-foot sign at the terminal's main gate that read "Maersk Pacific, Ltd." After Maersk Pacific changed its name, from May 2003 until at least October 22, 2004, the sign read "APM Terminals Pacific, Ltd." Because the only street access to the terminal is through the main gate, because the sign's size is substantial, and because Teller worked at the terminal for several years, he could have readily determined from the signs alone that the terminal's operator was Maersk Pacific or APM Terminals and not Maersk Line.

¶21 There is also strong evidence that Teller had or should have had actual knowledge that APM Terminals leased and operated the marine terminal. Teller's employer was specifically identified for him in a Department of Labor and Industries letter dated November 13, 2001, that dismissed Teller's prior discrimination claim against his "employer, Maersk Pacific Limited and CSX Lines." CP at 156.

And, as noted, Teller worked at the terminal for several years; the parties do not appear to dispute that Teller worked at the marine terminal from 1985 through at least 2001.

¶22 Finally, APM Terminals' identity as the lessee and operator of the marine terminal is a matter of public record because the Port of Tacoma, the marine terminal's owner, is a municipal corporation. *See* RCW 42.17.020(2) and (41); RCW 42.56.070(1). APM Terminals points out that a visit to the Port of Tacoma's web site provides quick access to information about APM Terminals' operation of the marine terminal, including the terminal's address, telephone number, web site, and background information. Failure to name a party in an original complaint is inexcusable where the omitted party's identity is a matter of public record. *Haberman*, 109 Wn.2d at 174; *Tellinghuisen*, 103 Wn.2d at 224; *S. Hollywood Hills Citizens Ass'n*, 101 Wn.2d at 77-78.

¶23 Teller contends that dicta in our decision in *Nepstad* demonstrates that "inexcusable neglect" does not apply to cases where the plaintiff employs relation back to correct a misidentified defendant but, rather, applies only where the plaintiff seeks to add new, necessary defendants to existing proper defendants. 77 Wn. App. 459. We disagree.

¶24 In *Nepstad*, we questioned whether "inexcusable neglect" applies to bar relation back of an amendment when a party has incorrectly identified the defendant. 77 Wn. App. at 467. We noted that "[t]he Supreme Court has applied the 'inexcusable neglect' inquiry 'in cases where leave to amend to add *additional* defendant[s] has been sought . . . .' " *Nepstad*, 77 Wn. App. at 467 (quoting *Haberman*, 109 Wn.2d at 174). We also noted that "none of the plaintiffs in the 'inexcusable neglect' cases misidentified the defendant" but instead had "failed to name all necessary parties and moved to amend to add the additional parties." *Nepstad*, 77 Wn. App. at 467.

¶25 Our analysis was that our Supreme Court in *North Street Ass'n*, 96 Wn.2d at 368, "announced that the

inexcusable neglect requirement applied to joinder of additional parties, but never stated that the requirement applied to cases of substitution to correct a mistaken identity" and that because *Nepstad* was a case of mistaken identity, inexcusable neglect should not in itself bar the relation back of the amendment. *Nepstad*, 77 Wn. App. at 467-68.

¶26 But in *Nepstad,* we ultimately held that the plaintiff's neglect was excusable and did not determine whether "inexcusable neglect" would actually apply in cases where the plaintiff attempts to correct misidentified defendants. 77 Wn. App. at 466-68. Rather, we merely expressed uncertainty about whether "inexcusable neglect" would apply in such cases. We stated only that "it . . . appears that inexcusable neglect should not in itself bar amendment" and that "[a] trial court may still consider 'inexcusable neglect' as an appropriate factor in a case such as this, but it is only one factor, not an absolute bar to amendment." *Nepstad,* 77 Wn. App. at 468.

¶27 In contrast, Division Three of this court, citing *Public Utility District No. 1 of Klickitat County v. Walbrook Insurance Co.*, 115 Wn.2d 339, 349, 797 P.2d 504 (1990), has specifically held that "[a]mendment under CR 15(c) is not allowed if the delay in substituting a party is because of inexcusable neglect or is a conscious decision, strategy or tactic." *Craig v. Ludy*, 95 Wn. App. 715, 719, 976 P.2d 1248 (1999).

¶28 Furthermore, although the Supreme Court has applied "inexcusable neglect" only to fact patterns involving plaintiffs seeking to add additional parties, it is not clear that this application has been a conscious decision or intended to suggest that inexcusable neglect does not apply to cases involving substitution of parties. In fact, our Supreme Court expressly stated in *Tellinghuisen* that "an amendment changing a party defendant will not relate back to the date of the original pleading, under CR 15(c), if the original omission was due to inexcusable neglect." 103 Wn.2d at 222. It further stated:

[A]n amendment adding a party will relate back to the date of the original pleading if three conditions are met. First, the added party must have had notice of the original pleading, so that he will not be prejudiced by the amendment. CR 15(c)(1). Second, the added party must have had actual or constructive knowledge that, but for a mistake concerning the proper party, the action would have been brought against him. CR 15(c)(2). Finally, the plaintiff's failure to timely name the correct party cannot have been "due to inexcusable neglect."

103 Wn.2d at 223 (citing *N. St. Ass'n*, 96 Wn.2d at 368). And unlike the proper defendant's identity in *Nepstad*, APM Terminals' identity was a matter of public record. *See* RCW 42.17.020(2) and (41); RCW 42.56.070(1).

¶29 Finally, *Nepstad*'s facts are distinguishable. In *Nepstad*, Jocelyn Fox collided with the rear of the 68-year-old Nepstad's car. 77 Wn. App. at 461-66. Several months before the accident, Fox had transferred legal title to her mother, Delores Beasley, so that the car could be insured under Beasley's insurance policy. *Nepstad*, 77 Wn. App. at 461. But Fox remained the vehicle's registered owner. *Nepstad*, 77 Wn. App. at 461. Immediately after the accident, Nepstad, shocked by the impact of the accident, misunderstood Fox's insurance card and wrote down Beasley's name and address, the PEMCO insurance policy number, and that " '[s]he was driving her folks [sic] car.' " *Nepstad*, 77 Wn. App. at 461-62 (alterations in original).

¶30 For the next two and a half years, Nepstad's attorney repeatedly corresponded with PEMCO, and in at least four letters various PEMCO representatives referred to "our insured" as "Beasley." *Nepstad*, 77 Wn. App. at 462. None of the letters referred to Fox. *Nepstad*, 77 Wn. App. at 462.

¶31 Nepstad filed an action against Beasley three months before the statute of limitations expired but did not name the proper defendant, Fox. *Nepstad*, 77 Wn. App. at 462. Before the statute of limitations expired, Nepstad served interrogatories on Beasley that Fox answered about one month after the statute of limitations expired, despite not being a named party. *Nepstad*, 77 Wn. App. at 463.

Beasley moved for summary judgment of dismissal one month after the statute of limitations had run, arguing that she was not involved in the accident. *Nepstad*, 77 Wn. App. at 463. We reversed the trial court's summary judgment order, explaining that Nepstad satisfied CR 15(c)'s requirements and that Nepstad's neglect was excusable. *Nepstad*, 77 Wn. App. at 464, 466, 468-69.

¶32 But where, as here, Teller attempted to amend his complaint to add a previously unidentified defendant, "inexcusable neglect" bars the claim despite our previous reluctance to apply "inexcusable neglect" under such circumstances. Unlike Teller, who first took action against Maersk Line three to four weeks before the statute of limitations expired, Nepstad actively participated in settling disputes with the other driver through Beasley's insurance company for two and a half years following the accident. *Nepstad*, 77 Wn. App. at 462. Further, the record indicates no good reason for Teller to have believed that any of the improperly named Maersk defendants leased and operated the marine terminal. Nepstad, however, had reason to believe that Beasley was the proper defendant because Fox's insurance company consistently referred to Beasley as "our insured." *Nepstad*, 77 Wn. App. at 462. Furthermore, the Maersk defendants did not participate in discovery and then move for summary judgment after the statute of limitations expired. *Nepstad*, 77 Wn. App. at 463. And unlike 68-year-old Nepstad, who misunderstood the insurance card of a stranger immediately after an automobile accident,[5] Teller worked at the marine terminal for several years before the accident; his failure to correctly name the proper defendant, therefore, is less understandable. Finally, as noted earlier, Fox's identity, unlike APM Terminals', was not a matter of public record.

---

[5] *Nepstad*, 77 Wn. App. at 461-62, 466.

## III. Equitable Estoppel

¶33 APM Terminals argues that (1) the Pierce County Superior Court erred when it reversed the district court's holding that equitable estoppel does not allow Teller's amended complaint to relate back; (2) Teller has presented no evidence that APM Terminals acted inconsistently with a prior admission, statement, or act; (3) any acts allegedly triggering the application of equitable estoppel occurred after the statute of limitations had run; (4) APM Terminals in no way misrepresented its identity; (5) APM Terminals did not cause Teller to name only improper defendants within the three-year statute of limitations; and (6) APM Terminals had no duty to inform Teller of its identity as the proper defendant even though its legal counsel also represented the improperly named Maersk defendants.

¶34 Teller responds that APM Terminals agreed to reveal its identity as the correct defendant if Teller voluntarily dismissed the five incorrect Maersk defendants. He argues that he relied on APM Terminals' agreement and that APM Terminals acted inconsistently by then asserting the statute of limitations defense after revealing its identity as the correct defendant.

¶35 At the threshold, we note that the parties appear to confuse equitable estoppel and waiver and have each advanced a complicated hybrid of the two principles. We nonetheless attempt to properly address each issue separately.

¶36 Washington courts do not favor equitable estoppel, and a party asserting it must prove each of its elements by clear, cogent, and convincing evidence. *Groves*, 111 Wn. App. at 310. The elements are: "(1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action by another in reasonable reliance on that act, statement, or admission; and (3) injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission." *Groves*, 111 Wn. App. at 310. "Estoppel is appropriate

to prohibit a defendant from raising a statute of limitations defense when a defendant has 'fraudulently or inequitably invited a plaintiff to delay commencing suit until the applicable statute of limitations has expired.' " *Groves*, 111 Wn. App. at 310-11 (emphasis omitted) (quoting *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992)). "The gravamen of equitable estoppel with respect to the statute of limitations is that the defendant made representations or promises to perform which lulled the plaintiff into delaying timely action." *Groves*, 111 Wn. App. at 311.

¶37 Here, APM Terminals did not act inconsistently with a prior admission, statement, or act. About five months after the expiration of the statute of limitations, Teller accepted Maersk, Inc.'s, attorney's (who is also APM Terminals' attorney) offer to disclose the identity of the lessee and operator of the marine terminal if Teller would voluntarily dismiss all five improperly named Maersk defendants. Maersk, Inc.'s, counsel never agreed to waive the statute of limitations defense as part of the agreement. Both parties performed their respective obligations under the agreement; thus, Maersk, Inc., did not act inconsistently with a prior statement, admission, or act. And as APM Terminals notes, it was not yet a party to the action when Maersk, Inc., made its agreement with Teller; APM Terminals could not have acted inconsistently with a prior act because it was not yet involved in the action in any way.

¶38 More importantly, however, APM Terminals did not fraudulently or inequitably lull Teller to delay commencing his action until the statute of limitations expired. APM Terminals was not involved in the action until five months after the statute of limitations had expired. Moreover, even though APM Terminals and the Maersk defendants share the same attorney, their attorney was under no obligation to inform Teller that APM Terminals was the proper defendant. An attorney who represents two separate but related entities—namely, a misidentified entity named as a defendant in a plaintiff's original complaint and a properly named entity in a later amended complaint—has no duty to

inform the plaintiff of the correct entity's identity, even if the attorney has actual knowledge of the litigation's pendency. *Foothills*, 46 Wn. App. at 376.

## IV. WAIVER OF AFFIRMATIVE DEFENSE

¶39 APM Terminals finally argues that it did not waive its assertion of the statute of limitations defense and that it did not act inconsistently with its assertion of the statute of limitations defense because it was not a party to the action and had no contact with Teller until five months after the statute of limitations expired.

¶40 Teller responds that "APM Terminals mandated discovery and forced Mr. Teller to dismiss his claim against all named defendants, even though the information was available to APM with reasonable inquiry. In so doing, they knew that Mr. Teller would be unable to rely *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 815 P.2d 781 (1991), . . ." to toll the statute of limitations. Br. of Resp't at 19; *Sidis*, 117 Wn.2d at 329-30 (the statute of limitations is tolled as to all unserved defendants when service of process is achieved against one defendant).

¶41 Under the doctrine of waiver, affirmative defenses such as insufficient service of process may, in certain circumstances, be waived by a defendant as a matter of law. *Lybbert v. Grant County*, 141 Wn.2d 29, 38-39, 1 P.3d 1124 (2000). Waiver can occur if the defendant's assertion of a defense is inconsistent with the defendant's previous behavior and if the defendant's attorney has been dilatory in asserting the defense. *Lybbert*, 141 Wn.2d at 39.

¶42 Here, APM Terminals did not act inconsistently with any previous behavior, nor was it dilatory in asserting the statute of limitations defense. Teller added APM Terminals as a defendant in his second amended complaint. In response, about six weeks later, APM Terminals moved for summary judgment, arguing that the applicable statute of

limitations had run. Thus, APM Terminals was not dilatory in asserting the defense.

¶43 Moreover, in *Lybbert*, our Supreme Court stated that waiver may apply when the defendant waits for the statute of limitations to run, knowing that he has not been properly served but, nonetheless, (1) files a notice of appearance, (2) actively participates in discovery by serving and responding to interrogatories and requests for production, and (3) obtains a letter from the plaintiff expressing the plaintiff's belief that the defendant was properly served. *Lybbert*, 141 Wn.2d at 40-43. Here, neither the Maersk defendants nor APM Terminals delayed Teller's identification of Maersk Pacific or APM Terminals.

¶44 Additionally, APM Terminals did not "mandate discovery" or force Teller to dismiss his claim against the five incorrect Maersk defendants. Maersk, Inc., not APM Terminals, agreed to identify the proper defendant in exchange for dismissal of all improperly named defendants.

¶45 And APM Terminals' conduct did not prevent Teller from taking advantage of the rule in *Sidis* that in order for the tolling statute to apply, " 'one or more of the defendants' " must be served. 117 Wn.2d at 329-30 (quoting RCW 4.16.170). Teller's service on the five Maersk defendants did not toll the statute of limitations because they were never proper defendants in Teller's action. Other than Jane Doe—who was presumably not served because Teller was unable to ascertain her name—Teller named and served only improper parties before naming APM Terminals. Although the tolling statute provides extra protection to plaintiffs in multidefendant actions from the harsh effects of the statute of limitations, *Sidis*, 117 Wn.2d at 330, neither the tolling statute nor the *Sidis* decision allows plaintiffs to circumvent the statute of limitations by naming and serving one or more improper defendants in order to acquire extra time to determine the correct defendant.

¶46 We reverse the superior court, affirm the district court, and remand with directions to dismiss Teller's claims.

ARMSTRONG and HUNT, JJ., concur.