[No. 36349-6-II.   Division Two.   April 29, 2008.]

DAVID A. HANNUM ET AL., *Appellants*, v. THE DEPARTMENT OF LICENSING ET AL., *Respondents*.

*Shawn G. Hart* (of *Hart Law Office*), for appellants.

*Robert M. McKenna, Attorney General,* and *Jennifer S. Meyer, Assistant,* for respondents.

¶1 ARMSTRONG, J. — David and Cynthia Hannum appeal a summary judgment order dismissing their claims against

the Washington State Department of Licensing (Department); its director, Liz Luce; and John and Jane Doe, employees of the Department. The Hannums argue that the trial court erred in dismissing their negligence claims under the public duty doctrine, that there were issues of material fact with respect to these claims, and that there were sufficient undisputed facts to grant them summary judgment on liability. They also argue that the trial court erred in dismissing their constitutional claims and that it should have granted them leave to amend their complaint to add claims against the Department's former director in his individual capacity. Because the public duty doctrine bars the Hannums' negligence claims, and they have not shown that they are entitled to damages or an injunction under the constitution, the trial court did not err in denying their motion to amend their complaint. We affirm.

## FACTS

### I. Driving Record Medical Notations

¶2 The Department of Licensing is responsible for ensuring that all licensed drivers are physically and mentally capable of driving on Washington's roadways. If a driver informs the Department that he or she has had a loss of consciousness or control within the prior six months, the Department issues the person a medical certificate. The certificate asks the driver's physician to evaluate whether the driver has a condition that may cause a loss of consciousness or control or has a mental or physical condition that may interfere with driving. The Department will not issue a license or will cancel the person's driving privilege if the physician answers affirmatively.

¶3 The Department tracks the issuance of medical certificates with a notation on the driver's record. A person who receives a medical certificate may continue with the licensing process, except for driving tests, while awaiting completion of the medical certificate. But the driver must return

the certificate within 30 days or the Department will cancel his or her driving privilege.

¶4 The Department provides different information to different types of entities that request a driver's record. Law enforcement agencies can request an abstract of a driver's complete record with or without the person's consent. If the Department has issued the driver a medical certificate, the abstract reflects this with the notation "Medical," but it does not state the reason the Department issued the medical certificate. Insurance companies and employers receive more limited information, and only with the driver's written consent. This information does not include notations of medical conditions or restrictions.

## II. DAVID HANNUM'S DRIVING RECORD

¶5 In 2001, David Hannum moved to Washington to work at the Hanford nuclear facility. Hannum was terminated from his employment soon thereafter; Hannum states that it was because of his whistleblowing activities, but his employer alleged that it was because of employment deficiencies and erratic behavior.

¶6 Hannum applied for a Washington State driver's license shortly after he was terminated. The Department placed a medical certificate requirement notation on Hannum's driving record. No one at the Department followed up on the notation, and it remained on Hannum's record.

¶7 In February 2005, Hannum enrolled in a school district bus driving course and applied for a commercial driver's license as a course requirement. The Department did not issue the license because of the medical certificate requirement notation, and a Department employee provided Hannum with a medical certificate for his doctor to fill out. Hannum returned to the Department and asked why he needed a medical examination in order to get a commercial driver's license. A Department employee told Hannum about the notation.

¶8 On February 23, 2005, Hannum wrote the Department a letter asking it to investigate the notation. On March 4, 2005, the Department wrote back, explaining that it was unable to locate any documents supporting the medical certificate requirement and that it would remove the notation, which it did the next day. Hannum obtained his commercial driver's license a few days later. But by this time, he was no longer enrolled in the school bus driver course. Hannum alleged that the instructor told him to leave and not come back when Hannum informed him of the notation. The instructor stated that he asked Hannum to leave due to his odd behavior and difficulties with staff.

III. PROCEDURAL HISTORY

¶9 Hannum and his wife, Cynthia Hannum, sued the Department, alleging state and federal constitutional violations, negligence, and negligent infliction of emotional distress. They alleged that the notation caused various injuries, including the loss of the right to compete for the school bus driver job and emotional distress suffered when various people, including the bus driving course instructor and a Pasco police officer, saw or learned of the notation.

¶10 The Department removed the case to federal court. The federal district court granted the Department's motion for summary judgment on the federal claims, but denied it with respect to the state claims, and remanded those to the trial court. The federal district court also denied the Hannums' motion for partial summary judgment on liability and denied without prejudice their motion to amend their complaint to include the Department's former director.

¶11 Following remand, the trial court granted the Department's motion for summary judgment on the remaining claims and denied the Hannums' motion for partial summary judgment on liability. It also denied the Hannums' motion to amend their complaint to include the Department's former director.

## ANALYSIS

### I. Summary Judgment Standard

■■ ¶12 We review an order granting summary judgment de novo. *Go2Net, Inc. v. FreeYellow.com, Inc.*, 158 Wn.2d 247, 252, 143 P.3d 590 (2006) (citing *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 154 Wn.2d 345, 350, 119 P.3d 1173 (2005)). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all facts, and reasonable inferences from those facts, in the light most favorable to the nonmoving party. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005) (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)).

### II. Negligence Claims

¶13 The Hannums argue that the trial court erred in granting the Department summary judgment on their negligence and negligent infliction of emotional distress claims because there were questions of material fact; they also claim that the trial court should have granted them summary judgment on the negligence claim because the uncontested facts demonstrate that they were entitled to judgment as a matter of law. The Department responds, in part, that the public duty doctrine bars these claims.

■■ ¶14 A cause of action for negligence exists only if the defendant owed a duty of care to the plaintiff. *Chambers-Castanes v. King County*, 100 Wn.2d 275, 284, 669 P.2d 451 (1983). Under the public duty doctrine, a public entity does not have a duty of care to the public in general. *Osborn v. Mason County*, 157 Wn.2d 18, 27, 134 P.3d 197 (2006). The doctrine is based on the principle that " 'a duty to all is a duty to no one.' " *Osborn*, 157 Wn.2d at 27 (quoting *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001)).

¶15 There are, however, certain exceptions to the public duty doctrine where the public entity owes a duty of care to a particular plaintiff or a limited class of potential plaintiffs. *Babcock*, 144 Wn.2d at 785-86. These exceptions include legislative intent, failure to enforce, the rescue doctrine, and a special relationship. *Babcock*, 144 Wn.2d at 786. The Hannums allege that the legislative intent exception applies. The legislative intent exception applies where the terms of a statute evidence a clear intent to identify and protect a particular and circumscribed class of persons. *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 929, 969 P.2d 75 (1998). The statutory language must clearly express this intent; a court will not imply it. *Ravenscroft*, 136 Wn.2d at 930. A court may look to a statute's declaration of purpose to ascertain legislative intent. *Dorsch v. City of Tacoma*, 92 Wn. App. 131, 134, 960 P.2d 489 (1998) (citing *Taylor v. Stevens County*, 111 Wn.2d 159, 165, 759 P.2d 447 (1988)). Where the legislative intent exception applies, a member of the identified class may bring a tort action against the governmental entity for its violation of the statute. *Ravenscroft*, 136 Wn.2d at 929.

¶16 The trial court found no exception to the public duty doctrine and, therefore, the Hannums' claims for negligence and negligent infliction of emotional distress failed.

¶17 The Hannums assert that RCW 46.20.041 demonstrates the legislature's intent to protect persons who may have a mental or physical disability or disease that affects their ability to drive by providing these persons with notice and an opportunity to respond. RCW 46.20.041 provides, in part:

(1) If the department has reason to believe that a person is suffering from a physical or mental disability or disease that may affect that person's ability to drive a motor vehicle, the department must evaluate whether the person is able to safely drive a motor vehicle. As part of the evaluation:

(a) The department shall permit the person to demonstrate personally that notwithstanding the disability or disease he or she is able to safely drive a motor vehicle.

(b) The department may require the person to obtain a statement signed by a licensed physician or other proper authority designated by the department certifying the person's condition.

¶18 The Hannums' argument, however, does not consider the legislative intent "within the context of the entire statute." *Burnett v. Tacoma City Light*, 124 Wn. App. 550, 562, 104 P.3d 677 (2004) (citing *State v. Elgin*, 118 Wn.2d 551, 556, 825 P.2d 314 (1992)). The declaration of purpose of the Department's enabling statute provides:

> The legislature finds that the department of licensing administers laws relating to . . . the licensing and regulation of vehicles and vehicle operators . . . . The laws administered by the department have the common denominator of licensing and regulation and are directed toward protecting and enhancing the well-being of the residents of the state.

RCW 46.01.011. This declaration focuses on the "well-being of the residents of the state," not merely those the Department believes suffer from a mental disability or disease that may affect their ability to drive. Taken in this context, RCW 46.20.041 evidences the legislature's intent to protect the public by ensuring that the Department does not issue licenses to persons who may not be able to safely operate a motor vehicle; the provision allowing an applicant to prove that despite a disability or disease, he or she is capable of driving safely, is simply part of the screening process. It does not show a legislative intent to protect a particular class of citizens. Thus, RCW 46.20.041 does not express a clear intent to protect a particular and circumscribed class of persons, and we may not imply one.

¶19 The trial court did not err in concluding that the public duty doctrine barred the Hannums' negligence and negligent infliction of emotional distress claims. Because the trial court properly dismissed these claims, we need not consider whether material issues of fact exist as to the Hannums' negligence claims.

¶20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the

Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and HUNT, J., concur.