[No. 41367-1-II.   Division Two.   December 28, 2011.]

STELLA WATSON ET AL., *Appellants*, v. MICHAEL
EMARD ET AL., *Respondents*.

692

694

*Timothy R. Gosselin* (of *Gosselin Law Office PLLC*), for appellants.

*Gregory S. Worden* (of *Barrett & Worden PS*), for respondents.

¶1 ARMSTRONG, J. — In May 2006, Miles Emard drove his car into Stella Watson's car in a Safeway parking lot. In April 2009, Watson filed a personal injury complaint against Michael Emard, Miles's father, mistakenly believ-

ing that he was the driver of the car that hit her. After the statute of limitations ran, Watson discovered that Miles was the actual driver. She moved to amend her complaint to add a family car claim against Michael and to add Miles as a party. The trial court denied her motion and later dismissed the action. On appeal, Watson contends that the trial court should have granted her motion because her neglect in alleging that Michael was the driver was excusable. We agree and, therefore, reverse and remand.

## FACTS

¶2 On May 10, 2006, Stella Watson backed her car out of a parking stall in the Safeway parking lot and felt the impact of a low-speed collision. Miles Emard was driving the vehicle that hit Watson and was insured as a driver under a Safeco insurance policy held by his father, Michael Emard.[1]

¶3 Immediately after the collision, Miles showed Watson an insurance card that listed Michael as the insured on the Safeco policy. Miles's address was also written on a piece of paper, although the parties dispute who wrote it.

¶4 Watson, in her declaration, states that she asked Miles, "Your name is Michael Emard?" To which Miles replied, "[Y]es." Clerk's Papers (CP) at 50. Watson wrote what she believed was Miles's name, "Michael," and she wrote his insurance card information and his address on the back of a receipt. CP at 50. She asked him for his driver's license and she told him they should call the police. But Miles got into his car and drove away.

¶5 Miles declares that Watson never asked his name. He also recalls no request for his driver's license and denies that the parties discussed calling the police.

¶6 On May 16, 2006, in a recorded conversation, Watson told a Safeco agent that the driver's name was "Michael

---

[1] We use the Emards' first names for clarity.

Emond [sic]." CP at 180-85. Watson also told Safeco that the police filed report #06-13227 in the accident.[2] Safeco sent six letters to Watson, listing "our insured" as "Michael Emard." CP at 36.

¶7  On April 2, 2008, Watson retained counsel. For the next year, counsel and Safeco corresponded about the claim with all correspondence referring to Michael as the insured. On April 6, 2009, counsel sent Safeco a copy of the personal injury complaint she intended to file and did file on April 27, 2009. Watson served Michael and his wife at the home they share with Miles on April 29, 2009. The statute of limitations expired on May 10, 2009. RCW 4.16.080. At no time before the statute of limitations expired did Watson, or her counsel, ask about the driver's identity.

¶8  On June 8, 2009, Michael filed his answer, specifically alleging as an affirmative defense, that the "[n]on-party at fault [is] the person of Miles Emard." CP at 9. Then, in November 2009, Michael moved for summary judgment on the grounds that he was not the driver. Later that month, Watson initiated discovery by serving interrogatories on Michael. In January 2010, Watson moved to amend her complaint to add Miles as an additional defendant and to add a claim against Michael under the family car doctrine. The trial court denied her motion, explaining that the insurance company had no obligation to tell Watson the driver's identity. The trial court concluded that "[a] simple set of interrogatories or a demand for filing not only the complaint but following up with a deposition or something would have solved it. . . . No way. Motion to add, nope, not gonna happen." Report of Proceedings (RP) (Feb. 22, 2010) at 9.

¶9  In October 2010, the trial court granted Michael's motion for summary judgment.

---

[2] But, on appeal Watson states that "[t]here was no police report." Br. of Appellant at 15.

## ANALYSIS

### I. Summary Judgment Standard

¶10 We review an order granting summary judgment de novo. *Hannum v. Dep't of Licensing*, 144 Wn. App. 354, 359, 181 P.3d 915 (2008). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing a summary judgment, we consider all facts, and reasonable inferences from those facts, in the light most favorable to the nonmoving party. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005).

### II. Leave To Amend Complaint

¶11 Watson argues that the trial court should have granted her motion to amend because her neglect in learning that Miles was the driver of the car was excusable. Michael counters that the neglect was inexcusable; he does not contend that an amendment would prejudice him.

¶12 The purpose of a notice pleading is to " 'facilitate a proper decision on the merits.' " *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 349, 670 P.2d 240 (1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). In pursuit of this, the trial court should freely grant leave to amend "when justice so requires." CR 15(a); *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). The trial court considers several factors to determine whether to grant leave to amend, including undue delay, juror confusion, and unfair surprise. *Wilson*, 137 Wn.2d at 505-06.

¶13 We review a trial court's denial of leave to amend a complaint for an abuse of discretion. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 728-29, 189 P.3d 168 (2008) (citing *Tagliani v. Colwell*, 10 Wn. App. 227, 233, 517 P.2d 207 (1973)). A court abuses its discretion if its decision is not

based on tenable grounds or tenable reasons. *Haselwood v. Bremerton Ice Arena, Inc.*, 137 Wn. App. 872, 889-90, 155 P.3d 952 (2007), *aff'd*, 166 Wn.2d 489, 210 P.3d 308 (2009). But a trial court's failure to explain its reason for denying leave to amend may amount to an abuse of discretion unless the reasons for denying the motion are apparent in light of circumstances shown in the record. *Rodriguez*, 144 Wn. App. at 729 (citing *Tagliani*, 10 Wn. App. at 233).

A. Adding a Claim

¶14 Under CR 15(c), parties may generally amend pleadings to relate back to the date of original filing if the amendment relates to conduct, transactions, or occurrences in the original pleading. *Miller v. Campbell*, 164 Wn.2d 529, 537, 192 P.3d 352 (2008). This rule is based on the premise that once litigation involving particular conduct has been instituted, the parties are not entitled to statute of limitations protection against adding claims that arise out of the conduct alleged in the original pleading. *Caruso*, 100 Wn.2d at 351. CR 15(c) clearly distinguishes between amendments that add new claims and amendments that add new parties. *Stansfield v. Douglas County*, 146 Wn.2d 116, 122, 43 P.3d 498 (2002). Inexcusable neglect is not a ground for denying a motion to add new claims. *Stansfield*, 146 Wn.2d at 122.

¶15 Liability under the family car doctrine arises when (1) the car is owned, provided, or maintained by the parent (2) for the customary conveyance of family members and other family business, and (3) at the time of the accident, the car is being driven by a member of the family for whom the car is maintained (4) with the parent's express or implied consent. *Pascua v. Heil*, 126 Wn. App. 520, 530 n.6, 108 P.3d 1253 (2005). Thus, the same set of facts supports Watson's complaint for damages under the theory of ordinary negligence and vicarious liability under the theory of the family car doctrine. *See Hart v. Hogan*, 173 Wash. 598, 603, 24 P.2d 99 (1933) ("One who furnishes an

automobile for the use of his family is liable to a third person for injuries sustained as the result of the negligence of a member of the family in the operation of the automobile . . . ."). Moreover, Safeco insures both Miles and Michael and they were aware of the facts of the accident and the possibility that Michael would be sued under the family car doctrine. Perhaps because of this, Michael does not argue that the family car facts differ materially from the basic facts of the accident; nor does he argue that allowing the claim would prejudice him.

¶16 We conclude that the trial court abused its discretion by failing to explain why it denied Watson leave to amend to add a family car claim. And we can find no apparent reason for the denial in the record. Because Watson's family car claim arises from the same transaction alleged in the original pleading, the 2006 collision, the court should have allowed the amendment.[3]

## B. Adding a Party

¶17 Watson asserts that there is no dispute that she met the CR 15(c) requirements to add Miles as a party; Michael does not challenge this. Rather, he argues that Watson's failure to add Miles as a party before the statute of limitations ran resulted from inexcusable neglect.

¶18 The touchstone for denying amendment of a complaint is the prejudice such amendment will cause the nonmoving party. *Haselwood*, 137 Wn. App. at 889 (quoting *Caruso*, 100 Wn.2d at 350). In determining prejudice, a court considers the possible undue delay, unfair surprise, and the futility of amendment. *Haselwood*, 137 Wn. App. at

---

[3] Michael argues that if we deny Watson the ability to add Miles as a party—the merits of which we address next—we must also deny Watson's additional claim against Michael under the family car doctrine. He reasons that allowing Watson's family car claim would be futile if Miles could not be held separately liable, citing *Kaynor v. Farline*, 117 Wn. App. 575, 578, 72 P.3d 262 (2003), and *Doremus v. Root*, 23 Wash. 710, 63 P. 572 (1901). Neither case supports Michael's argument, and because we are allowing Watson to add Miles as a defendant, we need not further address the argument.

889 (citing *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987)). The judicial preference to allow amendments that relate back is consistent with the policy that a case should be decided on the merits. *Herron*, 108 Wn.2d at 167.

¶19  CR 15(c) permits a new party to be added after the statute of limitations has run if

> the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in . . . his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Michael does not challenge Watson's ability to meet the statutory requirements of CR 15(c).

¶20  But even if CR 15(c)'s requirements are satisfied, a party's failure to timely name a necessary party cannot be remedied if the failure resulted from "inexcusable neglect." *Teller v. APM Terminals Pac. Ltd.*, 134 Wn. App. 696, 706, 142 P.3d 179 (2006) (citing *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 174, 744 P.2d 1032 (1987)). The moving party has the burden of proof to show that any mistake in failing to timely amend was excusable. *Teller*, 134 Wn. App. at 705-06. "Generally, inexcusable neglect exists when no reason for the initial failure to name the party appears in the record." *Teller*, 134 Wn. App. at 706. The failure to name a party who is apparent, or ascertainable upon reasonable investigation, is inexcusable. *Teller*, 134 Wn. App. at 706-07. A party is charged with her attorney's failure to research and identify all necessary parties. *Teller*, 134 Wn. App. at 707 (citing *Nepstad v. Beasley*, 77 Wn. App. 459, 467, 892 P.2d 110 (1995)); *see also Tellinghuisen v. King County Council*, 103 Wn.2d 221, 224, 691 P.2d 575 (1984) (identity of proper defendant could be obtained through public record).

¶21  In *Nepstad*, Jocelyn Fox collided with Nepstad's car. *Nepstad*, 77 Wn. App. at 461. Fox's mother, Delores Beasley,

had insured Fox's car. *Nepstad*, 77 Wn. App. at 461. After the accident, Nepstad recorded some but not all of the information on the insurance card Fox supplied, and misunderstood her identity. *Nepstad*, 77 Wn. App. at 462. The parties disputed whether Fox showed her driver's license to Nepstad. *Nepstad*, 77 Wn. App. at 462. Nepstad's attorney corresponded with Beasley's insurance company for over two years. *Nepstad*, 77 Wn. App. at 462. The insurance company sent Nepstad four letters referencing Beasley as " 'our insured.' " *Nepstad*, 77 Wn. App. at 462. Nepstad filed her complaint against Beasley three months before the statute of limitations expired but did not name Fox. *Nepstad*, 77 Wn. App. at 462. We found Nepstad's neglect in not naming Fox excusable because the record reflected that Nepstad misidentified the defendant after she misread the insurance card, misunderstood the identity of the driver, and had no reason to know the proper party. *Nepstad*, 77 Wn. App. at 466.

¶22 But where a party learns the identity of a missing party before the statute of limitations runs, failure to comply with the statute is inexcusable neglect. *See Segaline v. Dep't of Labor & Indus.*, 169 Wn.2d 467, 478, 238 P.3d 1107 (2010). In *Segaline*, 169 Wn.2d at 471, Croft, a Department of Labor and Industries (Department) employee, drafted a "no trespass" notice because Segaline repeatedly conducted himself in a coarse manner in the building. A department employee presented Segaline with the notice. *Segaline*, 169 Wn.2d at 471. After Segaline sued the Department for barring him from the office, the Department informed him, in response to his interrogatories, that Croft had drafted the notice. *Segaline*, 169 Wn.2d at 478. Segaline did not move to amend his complaint and add Croft as a defendant until nine months later, after the statute of limitations expired. *Segaline*, 169 Wn.2d at 478. The court held that Segaline's delay was the result of inexcusable neglect. *Segaline*, 169 Wn.2d at 478.

¶23 Although the facts here show neglect, it does not rise to the level of "inexcusable" when measured against

*Segaline* and *Nepstad*. Watson clearly could have done more to learn the identity of the driver of the Emard car. But nothing in the record shows that she actually did know Miles was the driver, or that she had information that would compel the conclusion that someone other than Michael was the driver. Michael does not dispute that Miles showed a Safeco card identifying his father as the insured. Nor does he contend that Miles gave Watson his own name. Finally, Safeco consistently referred to Michael as the insured in corresponding with Watson and her counsel. We find Watson's failure to name Miles in her original complaint to be excusable neglect.

¶24 The trial court abused its discretion by failing to explain its denial of Watson's motion. After argument, the trial court simply concluded that "[a] simple set of interrogatories or a demand for filing not only the complaint but following up with a deposition or something would have solved it. . . . No way. Motion to add, nope, not gonna happen." RP (Feb. 22, 2010) at 9. Yet the core issues were whether the Emards would be prejudiced by the late amendments and whether Watson knew before the statute of limitations ran that Miles was the driver. The trial court's comments suggested only that it found inexcusable neglect by counsel's failure to commence early discovery. Michael, however, first gave Watson notice that he was not the driver when he filed his answer after the statute of limitations had run.

¶25 The trial court's failure to explain how it resolved these issues was an abuse of discretion. The leave sought should, as the rules require, be "freely given." Although the grant or denial of a leave to amend is within the trial court's discretion, outright refusal to grant the leave without any justifying reason is not an exercise of discretion; it is an abuse of that discretion. *Rodriguez*, 144 Wn. App. at 729; *Tagliani*, 10 Wn. App. at 233. We reverse the summary

judgment and remand for the trial court to grant Watson's motion to amend.

HUNT and QUINN-BRINTNALL, JJ., concur.